Jerry Lee ALLEN *v.* STATE of Arkansas

CR 92-94                                   838 S.W.2d 346

Supreme Court of Arkansas
Opinion delivered September 14, 1992

*Donald A. Forrest*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, for appellee.

R OBERT H. D UDLEY, Justice. James Lee Allen, appellant, was charged with capital murder. Under the capital murder statute, Ark. Code Ann. § 5-10-101 (Supp. 1991), there are two types of capital murder. One is the premeditated and deliberate killing of a person, and the other is the killing of a person in the course of one of several enumerated felonies. Appellant was charged only with premeditated and deliberate capital murder. This kind of premeditated capital murder charge includes the lesser charge of purposeful first degree murder. Appellant was not charged with the other kind of capital murder, often termed felony-murder, but even so, and over his objection, the trial court gave a first degree felony-murder instruction. He was convicted of "first degree murder." The verdict does not reflect whether the jury found him guilty of first degree premeditated murder or first degree felony-murder. It only reflects a finding of guilty of "first degree murder." Thus, appellant may have been convicted of first degree felony-murder, a crime with which he was never charged.

In *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), the accused was charged only with the premeditated sort of capital murder. At trial, evidence of a felony during the course of the killing was introduced and over the accused's objection the trial court gave a felony-murder instruction. In holding this was error, we said:

There are different elements of proof to these charges.

> According to the information, the state had to prove Ward acted with premeditation and deliberation and killed two or more people. As the jury was instructed, the state did not have to prove intent—it only had to prove that the murders occurred during the course of the felony.

*Id.* at 101, 733 S.W.2d at 7.

The same reasoning applies to this case, and, just as in the cited case, the jury may have convicted appellant of felony-murder. The conviction of a person for a crime with which he was never charged constitutes a clear violation of that person's constitutional right to due process. *Hill* v. *State*, 303 Ark. 462, 798 S.W.2d 65 (1990).

Some constitutional rights are so basic to a fair trial that their violation "can never be treated as harmless." *Gomez* v. *United States*, 490 U. S. 858 (1989). Examples are the right to counsel, *see Penson* v. *Ohio*, 488 U.S. 75, 88 (1988), and the right for a grand jury proceeding to be free of racial discrimination. *Vasquez* v. *Hillery*, 474 U.S. 254 (1986). In *Pope* v. *Illinois*, 481 U.S. 497, 502 (1987), the opinion of the court states that the harmless error inquiry is appropriate only when the trial was not fundamentally unfair. Quite probably one's right to be informed of a charge is that type of fundamental right that cannot be reviewed for harmless error since the right to notice of a charge is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Schad* v. *Arizona*, ___ U.S. ___, 111 S. Ct. 2491, 2497 (1991) (quoting *Speiser* v. *Randall*, 357 U.S. 513, 524 (1958)). Still, some constitutional rights are subject to the harmless error rule of *Chapman* v. *California*, 386 U.S. 18 (1967). *See, e.g., Rose* v. *Clark*, 478 U.S. 570 (1986). However, we are not required to decide whether this case comes within that class of cases that might be subject to the harmless error review, because, even if it should be, we could not hold beyond a reasonable doubt that the error did not contribute to the verdict. *See Yates* v. *Evatt*, 500 U. S. ___, 111 S. Ct. 1884 (1991). Thus, under either standard we must reverse.

Appellant argues that we must reverse and dismiss, rather than reverse and remand, because there is insufficient evidence to convict him of first degree murder either by purpose or felony-murder. We decline to dismiss the case, but because of the

argument, we necessarily set out the facts.

On the evening of November 16, 1990, appellant, Sam Harris, and John Reed were drinking beer in the parking lot of Catt's Liquor Store in Turrell. Sam Harris and John Reed were sitting in Sam Harris' car while the appellant was a short distance away talking to a friend. A pickup truck struck Harris' car and, without stopping, was driven away. Sam Harris started his car and began to chase the pickup truck. Both vehicles circled the block and, when they came back by the parking lot, appellant jumped in Sam Harris' car. Two other cars joined in the chase.

Shortly after the chase began, Sam Harris was able to read the numbers on the pickup truck's license plate and was ready to stop the chase. Appellant said, "Let's go get that truck," and the chase continued. A short distance away, the pickup truck was driven off the road and into a field and then in circles around the field. Sam Harris and the drivers of the other two chase cars stopped their vehicles near the field. Sam Harris knew that appellant had a pistol. Appellant left the Harris car and walked toward the pickup. According to appellant's statement he fired six shots at the rear window of the pickup truck, but he contends he only meant to scare the driver. One of the bullets struck the victim, Robert Harris, in the back of the head and immediately killed him. The appellant hid his pistol, but later told the police where it was and they recovered it.

One's intent to commit murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991). Here, appellant said, "Let's go get that truck" as they were chasing it. He got out of the car with a .38 caliber pistol and walked toward the pickup truck. He fired six shots from the comparatively large size pistol. One of the shots struck the victim above and behind his left ear and immediately killed him. These facts were sufficient for the jury to infer purposeful murder. Although appellant said he did not intend to kill the victim, but instead only intended to scare him, the jury was free to reject his testimony as false. *See Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Thus, we do not dismiss the charge of premeditated murder, but rather remand it for a new trial.

■ The felony-murder charge never was filed, and consequently we can neither remand nor dismiss it. However, since we are remanding the premeditated murder charge that was filed, and since the State might seek to amend the information to include a felony-murder count, we will discuss the issue. The proof showed that appellant fired a pistol when he killed the victim. At trial, the State contended that firing the pistol constituted the underlying felony of aggravated assault, and on that basis the trial court gave the felony-murder instruction. This was a misconstruction of the felony-murder statute. Under the first degree felony-murder statute, "a person commits murder in the first degree if . . . he commits . . . a felony, *and in the course of and in the furtherance of the felony* . . . causes the death of any person . . . ." Ark. Code Ann. § 5-10-102 (Supp. 1991) (emphasis supplied). The assault in this case was only in the furtherance of the murder, not of some other felony. In *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987), we focused on the emphasized language in the corresponding capital murder provision. There, the defendant chased one of his victims into the victim's house and killed him. The State proceeded on a felony-murder theory, using burglary as the underlying felony to support the conviction. In reversing we wrote, "[F]or the phrase 'in the course of and in furtherance of the felony' to have any meaning, the burglary must have an independent objective which the murder facilitates." *Id*. at 427, 731 S.W.2d at 759. In sum, under the proof, the appellant would not be guilty of felony-murder even if he were so charged.

■ Appellant next argues that the trial court erred in refusing to give his proffered instruction on manslaughter that "he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse." The trial court ruled correctly in refusing to give the instruction because there was no rational basis for giving it. *See Frazier* v. *State*, 309 Ark. 228, 828 S.W.2d 838 (1992).

Appellant's brief contains other points of appeal that are not necessary for us to discuss because they were not raised below, or the required proffers were not made on evidentiary rulings, or the alleged errors are not likely to arise again upon retrial.

Reversed and remanded.