Marvin G. JEFFERSON *v.* STATE of Arkansas

CA CR 03-781                                           185 S.W.3d 114

Court of Appeals of Arkansas
Division I
Opinion delivered June 2, 2004

*Raymond Abramson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant Marvin Jefferson appeals his convictions for attempted second-degree murder and aggravated robbery after a jury trial in Monroe County Circuit Court. Appellant was initially charged with attempted capital murder and aggravated robbery, as were co-defendants Ronald Foster and Tyrell Starr. Appellant argues that the trial court erred (1) in denying his motions for directed verdict, and (2) by admitting into evidence the statement of co-defendant Starr in violation of his Sixth Amendment right to confront witnesses against him. While we hold that the trial court did not err in denying the motions for directed verdict, we hold that error occurred in the admission of the co-defendant's statement. We reverse and remand for a new trial.

The events leading to charges came about on the afternoon of March 20, 2002, in Holly Grove, Arkansas. A bank's mail carrier, Mr. Rawls, was driving the bank van on a highway behind a Cadillac that bore no license plate. Mr. Rawls explained that the car's left turn signal was engaged, the car slowed to a stop, and that he stopped the van behind it in order not to hit the car. The Cadillac carried three persons. The front seat passenger in the Cadillac, wearing a ski mask, exited the car and shot at the van windshield four times. The shooter approached the passenger side of the van and demanded Rawls to "[g]ive me your money," threatening to kill Rawls. The shooter took a bank bag, threw it to the ground, and ordered the Cadillac's back seat passenger to retrieve it. The driver never exited the car. The two passengers re-entered the Cadillac and drove away. Rawls said neither the shooter nor the other passenger was wearing orange. Rawls was unable to see the driver except from his shoulders up, viewing the driver sitting in the driver's seat.

A man living near the location of the robbery, Marvin Ensley, said that he went to the area right after the incident because he heard it on the police scanner and said that he saw a black man wearing orange overalls walking along side the woods. Another man, Hal Bones, reported that he also discovered such a man walking, and said that he gave the man a ride. Bones reported that the man said he had been hunting but had lost his gun in the water. After Bones asked if he wanted to look for the gun, the man said he did not. A ski mask was located by police about a half mile from the crime scene. DNA testing of the saliva in the mask confirmed that it was worn by Foster.

Appellant was ultimately brought in for an interview with the police. In his statement that he gave the police, he said he was

in the car but did not know that either of the other two in the car had a gun or intended to rob anyone. Appellant claimed to be wearing bright orange at the time. Appellant denied driving the car and said that the shooting and robbery took place without any forewarning to him. Appellant said that, after the crimes, Foster went through the bank bag and began to discard items from the car. Appellant said that he exited the car and left them when they stopped the car. Appellant said he was just in the wrong place at the wrong time.

Both Foster and Starr gave handwritten statements to police. Starr implicated both appellant and Foster by name. Starr said that he allowed appellant to drive his car that day and that appellant stopped the Cadillac in the roadway. Starr reported that Foster was in the front passenger seat, put on the ski mask, and shot at the van. Starr claimed that appellant assisted Foster. Starr said that after the crime, he moved to the driver's seat to drive away, that appellant and Foster "jumped in" the car, and that Foster disposed of the bank bag and pieces of the gun.

Starr and appellant were tried together. Foster entered a guilty plea. Appellant moved in limine to prevent the use of Starr's statement, citing to *Bruton v. United States*, 391 U.S. 123 (1968), and *Gray v. Maryland*, 523 U.S. 185 (1998), and arguing that his Confrontation Rights would be violated by use of Starr's statement without the benefit of his testifying. The State retyped Starr's handwritten statement, changing both Foster's and appellant's names to "he," "they," or "some other guy," attempting to comply with the dictates of *Bruton, supra*, and *Gray, supra*. Appellant's counsel argued that even with the changes to pronouns, the inference was prejudicial by indirectly referring to appellant. The State offered to put Foster's name back into the statement where Foster was incriminated to avoid any confusion between Foster and appellant; the defense accepted that offer. However, defense counsel asserted that the statement was still violative of his rights of confrontation. The trial judge allowed the State to use Starr's modified statement, finding that the State's corrections complied with the *Bruton* and *Gray* cases.

At trial, Mr. Rawls testified as outlined above, and a State Police Investigator recounted his investigation of the crimes and read into evidence appellant's statement and the modified version of co-defendant Starr's statement. At the close of the State's presentation, defense counsel moved for directed verdict, admitting that appellant was present, though not necessarily the driver,

but arguing that the State failed to prove that he had the premeditation or deliberation necessary for attempted capital murder or knowledge that any such offense was about to take place. As to aggravated robbery, appellant argued that it was clear that Foster was the ski-masked shooter, appellant did not do the crime, and there was no proof that he had knowledge that a robbery was about to take place. The motions were denied.

The jury deliberated, finding appellant guilty of attempted second-degree murder and aggravated robbery. This appeal resulted. We now take up the issues presented for reversal.

■ First, as to his argument that his motion for directed verdict should have been granted, we do not address the attempted second-degree murder conviction. Appellant moved the trial court to direct a verdict solely on the greater offense of attempted capital murder. A defendant, in making his motions for directed verdict, must anticipate an instruction on lesser-included offenses and specifically address the elements of that lesser-included offense on which he wishes to challenge the State's proof in his motion. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003); *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001); *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001) (concluding that a challenge to the sufficiency of the evidence to support a first-degree murder conviction was procedurally barred; Haynes was charged with capital murder and failed to move specifically for directed verdict on the lesser-included offense of first-degree murder); *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

Second, we consider his challenge to the sufficiency of the evidence to support his aggravated robbery conviction. Appellant argued that there was no proof of his actual participation and further that there was no proof that he had any knowledge of the plan to commit this crime such that accomplice liability should not attach. We disagree. Appellant admitted his presence when the crimes occurred. Other witnesses confirmed the presence of a man matching appellant's description in the area shortly after the approximate time of the crimes. The question revolves around the sufficiency of the State's proof of his knowledge and intent.

■ Arkansas Code Annotated section 5-2-403(a) (Repl. 1993) provides that a person is an accomplice of another person in the commission of an offense if, with the requisite intent, he aids, agrees to aid, or attempts to aid the other person in the commission of the offense. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248

(1996). Under the accomplice liability statute, a defendant may properly be found guilty not only for his own conduct, but also for the conduct of his accomplice. *Id.* In a case based upon circumstantial evidence, relevant circumstances include the presence of an accused in proximity to the crime, opportunity, association with persons involved in a manner suggesting joint participation, and possession of instruments used in the commission of the offense. *Cassell v. State*, 273 Ark. 59, 616 S.W.2d 485 (1981).

■ Given the statement of Starr implicating appellant as an active participant in the crimes, the jury was the proper body to determine what the circumstances revealed. In a sufficiency-of-the-evidence query, we examine all of the evidence including evidence allegedly admitted erroneously, and review the evidence in the light most favorable to the State. *See Cook v. State*, 77 Ark. App. 20, 73 S.W.3d 1 (2002); *Willingham v. State*, 60 Ark. App. 132, 959 S.W.2d 74 (1998). Moreover, appellant's admitted presence and flight from the scene was for the jury to consider, even though he denied any criminal knowledge or intent. Intent can rarely be proved by direct evidence, but may be inferred from the circumstances of the crime, and jurors may draw upon common knowledge and experience to infer intent. *See Smith v. State*, 65 Ark. App. 216, 986 S.W.2d 137 (1999). The trial court did not err in denying the motion for directed verdict on aggravated robbery; it was a fact question properly left to the jury to resolve.

■ Appellant's second point on appeal concerns the trial court's admission of co-defendant Starr's statement to police, because of which appellant claims constitutional error. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This guarantee, extended against the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. *See Pointer v. Texas*, 380 U.S. 400 (1965).

■ In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is denied by the admission of incriminating statements made by a nontestifying co-defendant. *See also Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001). This concept is reflected in Rule 22.3 of the Arkansas Rules of Criminal Procedure, where it provides that in the context of a request for severance of trials due to a

co–defendant's statement, the trial court shall require the prosecuting attorney to elect one of the following courses: (i) a joint trial at which the statement is not admitted into evidence; (ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the moving defendant; or (iii) severance of the moving defendant.

■ In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court held that admission of a nontestifying co–defendant's confession does not violate the defendant's rights under the Confrontation Clause if the trial court instructs the jury not to use the confession in any way against the complaining defendant, and the confession is redacted to eliminate not only the defendant's name but also any reference to the defendant's existence. This idea was further explained in *Gray v. Maryland*, 523 U.S. 185 (1998), where the Supreme Court held that, where a written confession was redacted by replacing specific references to the other defendant by means of a blank space or the word "deleted" or "deletion," the statement continued to refer to someone and, in that case, obviously the other defendant.

■ However, in *United States v. Edwards*, 159 F.3d 1117 (8th Cir. 1998), our federal circuit court held that, unlike the deletions or blank spaces noted in *Gray*, it was permissible to use pronouns such as "we," "they," or indefinite words like "someone" because these words do not draw attention to the redaction, and in most situations will not be incriminating unless linked to a co–defendant by other trial evidence. The *Edwards* court explained that this method of redaction was proper in that case because the evidence referred to a large number of people from the neighborhood who were relevant to the case, and the redactions also referred to nondefendants, sufficiently weakening the information to be gleaned from the redacted statement. *See id.* at 1126. Because the administration of justice is often served well by joint trials, the *Edwards* decision noted that it is important to adopt workable redaction standards. *See Richardson, supra*; *Edwards, supra*.

To examine the merits of this argument, the contents of the statements must be more throughly reviewed. Starr's statement, as edited, revealed that Ronald Foster came to his house asking for a ride, that they encountered another male, that this other guy drove and Starr got in the back seat, and that the guy driving stopped the

car in the highway blocking the van. Starr then said that both Foster and the other guy got out of the car, that shooting started, that Starr quickly got into the driver's seat and took off, that they came back and jumped on the car and he stopped to let them in. Starr said he hurriedly drove the car away with Foster and the other guy, that Foster discarded items out of the window including a bank bag and pieces of the gun, that they became stuck in the mud, that Foster and the other guy wanted to burn up Starr's car, but then the other guy left them by walking back to town.

Appellant's statement was presented to the jury, and in it, appellant said that a male (called "he" and placed there to protect co-defendant Starr) and Foster approached appellant, that they were all in the car, that "they" stopped the car and committed the crimes, that the other guy was driving, and that appellant jumped out of the car as soon as he could and headed for town. Appellant said he wore bright orange that day. Appellant denied any involvement.

Appellant's contention on appeal is that even changing his name to a pronoun does not accomplish the directives of the United States Supreme Court. He argues that it was obvious that these references were indirect or veiled references to appellant and substantiated his existence and identity in the highly incriminating statement of Starr. We agree.

■■ ■ The State argues that if it was error to admit Starr's statement, then any error was rendered harmless because appellant admitted to being present in the car that day and that all the occupants actively participated in the crimes. We cannot accept the State's argument. Appellant admitted to being there and wearing orange, and the victim's testimony indicated that neither the shooter (Foster) nor the other person taking the money bag wore orange. His mere presence does not prove his knowledge or intent. The mere presence of a person at the scene of a crime is not proof of his guilt. *Green v. State*, 265 Ark. 179, 577 S.W.2d 586 (1979). The only evidence directly linking appellant to being the gunman's aide was that found in Starr's statement, in which he referred to the other guy getting out and assisting in the robbery after shots were fired. To conclude that a constitutional error is harmless and does not mandate reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *See Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995); *Allen v. State*, 310 Ark. 384, 838 S.W.2d 346 (1992); *Vann v. State*, 309 Ark. 303,

831 S.W.2d 126 (1992); *see also Chapman v. California*, 386 U.S. 18 (1967). We cannot come to such a conclusion.

Reversed and remanded.

STROUD, C.J., and GLADWIN, J., agree.