Marvin G. JEFFERSON *v.* STATE of Arkansas

CR 04-686 198 S.W.3d 527

Supreme Court of Arkansas
Opinion delivered November 18, 2004

*Raymond Abramson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

J IM HANNAH, Justice. ■ Appellant Marvin Gay Jefferson was convicted of attempted second-degree murder and aggravated robbery and sentenced to a total of thirteen years' imprisonment. Jefferson was initially charged with attempted capital murder and aggravated robbery, as were codefendants Ronald Foster and Tyrell Starr. Jefferson appealed his conviction to the court of appeals, which reversed on the ground that the circuit court erred in admitting into evidence the redacted statement of Jefferson's non-testifying

codefendant. *See Jefferson v. State*, 86 Ark. App. 325, 185 S.W.3d 114 (2004). We granted the State's petition for review of this decision, pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Zangerl v. State*, 352 Ark. 278, 100 S.W.3d 695 (2003). Jefferson raises two points on appeal for our consideration. He first argues that the circuit court erred in denying his motion for directed verdict. He also argues that the circuit court violated his Sixth Amendment right to confrontation, as set forth in *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, by admitting into evidence the redacted statement of his non-testifying codefendant, Tyrell Starr, at their joint trial. We hold that the circuit court erred in admitting codefendant Starr's redacted statement. Accordingly, we reverse and remand for a new trial.

*Facts*

On the afternoon of March 20, 2002, in Holly Grove, Arkansas, William Robert Rawls, a bank's mail courier, was driving the bank van on a highway behind a Cadillac that bore no license plate. Rawls stated that the car's left turn signal was engaged, that the car slowed to a stop, and that he stopped the van behind it in order not to hit the car. Three people were riding in the Cadillac. According to Rawls, the front seat passenger in the Cadillac, wearing a ski mask, exited the car and shot at the van windshield four times. Rawls said that the shooter then approached the passenger side of the van and said, "Give me your money." Rawls told the shooter that he did not have any money. The shooter replied that he was going to kill Rawls and then took Rawls's bank bag and threw it on the ground.

When the shooter threw the bag to the ground, he told the man who had been riding in the back seat of the Cadillac to pick up the bag. The man complied by putting the bag in the Cadillac's back seat. The driver of the Cadillac never exited the vehicle. The two passengers re-entered the Cadillac and drove away. Rawls testified that neither the shooter nor the other passenger was wearing orange. He said that the driver never turned around, and that he could only see the back of the driver's head and shoulders.

Marvin Ensley, a man who lived near the location of the robbery, was listening to his police scanner at the time of the robbery. After hearing about the incident on his scanner, Ensley went to the area of the robbery. Ensley later told law enforcement

officials that he had seen a black man wearing orange overalls walking along side the woods. Another man, Hal Bones, stated that on March 20, he gave a ride to Jefferson, who was wearing an orange suit. Bones reported that Jefferson told him that he had been hunting but had lost his gun in the water. Bones asked Jefferson if he wanted to go and look for the gun; Jefferson said that he did not. A ski mask was located by police about a half mile from the crime scene. DNA from saliva found on the mask was consistent with the DNA of Ronald Foster.

Jefferson was ultimately brought in for an interview with the police. In a statement given to a criminal investigator with the Arkansas State Police, Jefferson said that he was in the Cadillac at the time the crime occurred. However, he denied that he had any knowledge that the other two, one of whom he identified as Foster, were going to commit a robbery or that they had a gun. Jefferson claimed to be wearing bright orange at the time, and he said that "if I was going to do something like that[,] I would not have been wearing bright orange where everyone could see me."

Jefferson stated that after the crimes, Foster went through the bank bag and began to discard items from the car. Jefferson further stated that after Foster and Starr stopped the car, he exited the car, leaving the two behind. Jefferson said he was just in the wrong place at the wrong time.

Both Foster and Starr gave handwritten statements to the police. Starr implicated both Jefferson and Foster by name. Starr stated that he allowed Jefferson to drive his car that day and that Jefferson stopped the Cadillac in the roadway. Starr also stated that Foster was in the front passenger seat, put on a ski mask, and shot at the van. Starr claimed that Jefferson assisted Foster. Starr said that after the crime, he moved to the driver's seat to drive away, that Jefferson and Foster "jumped in" the car, and that Foster disposed of the bank bag and pieces of the gun.

Jefferson and Starr were tried together. Foster entered a guilty plea. Prior to trial, Jefferson filed a motion in limine to prevent the use of Starr's statement, arguing that pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and *Gray v. Maryland*, 523 U.S. 185 (1998), his Confrontation Rights under the Sixth Amendment would be violated by use of Starr's statement without the benefit of his testifying. The State retyped Starr's handwritten statement, changing both Foster's and Jefferson's names to "he," "they," or "some other guy," attempting to comply with the

dictates of *Bruton, supra,* and *Gray, supra.* Jefferson's counsel contended that even with the changes to pronouns, the inference was prejudicial by indirectly referring to Jefferson. The State put Foster's name back into the statement where Foster was incriminated to avoid any confusion between Foster and Jefferson. Jefferson's counsel maintained that the statement was still violative of Jefferson's rights of confrontation, even with the addition of Foster's name. The circuit court disagreed and allowed the State to use Starr's modified statement, finding that the State's corrections complied with the requirements of *Bruton* and *Gray.*

At trial, Rawls testified as outlined above, and Barry Roy, a criminal investigator with the Arkansas State Police, recounted his investigation of the crimes and read into evidence Jefferson's statement and a modified version of codefendant Starr's statement. At the close of the State's case, Jefferson moved for a directed verdict, arguing that the State failed to prove that he had the premeditation or deliberation necessary for attempted capital murder or knowledge that any such offense was about to take place. As to the aggravated robbery, Jefferson argued that the prosecution failed to prove that he had the purpose to commit a theft or that he was an accomplice. The motions were denied.

The jury deliberated, finding Jefferson guilty of attempted second-degree murder and aggravated robbery. We now address Jefferson's arguments on appeal.

### Sufficiency of the Evidence

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Ramaker v. State,* 345 Ark. 225, 46 S.W.3d 519 (2001). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Cummings v. State,* 353 Ark. 618, 110 S.W.3d 272 (2003). We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Ross v. State,* 346 Ark. 225, 57 S.W.3d 152 (2001). The question of

whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

Jefferson contends that the circuit court erred in denying his motion for directed verdict as to the charge of attempted capital murder because the State failed to prove that he acted with premeditation and deliberation, that he took a substantial step in the course of conduct intended to culminate in the commission of capital murder, or that his conduct was strongly corroborative of his criminal purpose. Though charged with attempted capital murder, Jefferson was convicted of the lesser-included offense of attempted second-degree murder. Nevertheless, Jefferson moved the circuit court to direct a verdict solely on the greater offense of attempted capital murder.

■■ We hold that Jefferson's argument concerning the sufficiency of the evidence as to his second-degree murder conviction is procedurally barred. A defendant, in making his motions for directed verdict, must anticipate an instruction on lesser-included offenses and specifically address the elements of that lesser-included offense on which he wishes to challenge the State's proof in his motion. *See Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). Since Jefferson failed to address the elements of attempted second-degree murder in his directed-verdict motion, we do not address this issue.

Next, we consider Jefferson's challenge to the sufficiency of the evidence to support his aggravated robbery conviction. Jefferson argued that there was no proof of his actual participation and that there was no proof that he had any knowledge of the plan to commit this crime such that accomplice liability should attach. Pursuant to Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997), a person commits aggravated robbery if he commits robbery and is armed with a deadly weapon or represents by word or conduct that he is so armed. A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another. Ark. Code Ann. § 5-12-102(a) (Repl. 1997).

■ A person is criminally liable for the conduct of another person when he is an accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl.

1997). One's presence at the crime scene or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Atkinson v. State*, 347 Ark. 336, 347, 64 S.W.3d 259, 266 (2002). Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Id.* Under the accomplice liability statute, a defendant may properly be found guilty not only of his own conduct, but also that conduct of his accomplice; when two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Finally, there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Id.*

�▇▇▇▇ In this case, Jefferson admits to being in the Cadillac when the crimes occurred. He further stated that he was "wearing bright orange" at the time of the crime. Rawls stated that neither of the two men who got out of the Cadillac was wearing a bright orange suit at the time of the crimes, and that the person remaining in the car was the driver. The State contends the jury could have reasonably concluded that Jefferson was the driver, and that by blocking the van, which required it to stop, and by waiting while Foster fired shots at the van's driver and Jefferson and Foster's companion retrieved the bank bag, Jefferson aided or encouraged the commission of aggravated robbery, thereby establishing his guilt as an accomplice. The State's contention is well taken. Further, Jefferson's admitted presence and flight from the scene was for the jury to consider, even though he denied any criminal knowledge or intent. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence. *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003). Intent to commit a robbery may be inferred from the facts and circumstances of the case. *Jenkins v. State*, 350 Ark. 219, 85 S.W.3d 878 (2002). The circuit court did not err in denying the motion for directed verdict on the aggravated robbery; it was a fact question properly left to the jury to resolve.

### Redacted Statement

Jefferson next argues that the circuit court erred in denying his motion in limine to preclude admission of a non-testifying

codefendant's statement, in violation of his Sixth Amendment right of confrontation. Jefferson and two other men were originally charged with aggravated robbery and attempted capital murder. One of the men, Ronald Foster, entered a guilty plea. The remaining man, Starr, was to be tried with Jefferson. Jefferson filed a motion to sever. The motion was denied. Both Jefferson and Starr gave statements to police. Jefferson filed a motion in limine to preclude the State from admitting Starr's statement. In response to the motion, the circuit court ordered redaction of the out-of-court statements of both defendants. The State removed the names and used substitutes, such as "he," "him," and "them." At the request of defense counsel, Foster's name was put back into the statements. Still, Jefferson continued to argue that even with the redactions, he could not protect his right of cross-examination secured by the Confrontation Clause, and he proposed further redactions in the statements. The circuit court did not allow further redactions. The statements as admitted into evidence are as follows:

### Statement of Tyrell Starr

I had went to Stuttgart to fill out some job applications and while I was gone Ronald Foster called my grandmother Willie Mae Strong's house, looking for me. When I got back, grandma told me Ronald Foster had called. Then Ronald Foster came walking up to the house. Ronald Foster told me he wanted to ride. He said make the block and then told me to stop and he got out of the car and talked to some guy. I didn't hear what they were talking about. He said "I ain't never drove your car I always let you drive my car." I let him drive my car. We went to the liquor store, and I went inside and bought some beer. Then I got in the back seat behind him, and we rode out of town on Highway 17. I noticed Ronald and him looking back, and I saw a white van behind us. We were driving in the middle of the road so the van could not pass us. Then he slowed down and turned his blinker on like he was going to turn. Then he stopped in the road. When they stopped, I was wondering what was going on. I had not seen a mask or a gun at this time. When the car stopped it was blocking the road. Ronald was sitting in the front passenger's seat, and he pulled the ski mask over his head and I saw the gun. Ronald got out of the car and started shooting at the van. He got out and ran back there to. I was scared so I jumped out and got under the driver's wheel and started to drive off. They just jumped on the car, they did not get in the car. I stopped and they got in the car. I asked them "What the — they were doing?" They told me to shut up and drive. We hit the mud hole hard and mud

and water went all over the car. We went up the road and after we went through the mud hole, Ronald started throwing stuff out the window. He threw a long red bag — a long black bag, a red bank bag and then tried to take the gun apart and throw it away piece by piece. We took a right on Sand Road and we had to turn around, water was too deep. We went back toward Holly Grove about a half a mile and turned left into a field road and we got stuck. They wanted me to burn my mama's car up. "Y'all just — up." We were then stuck for a couple of hours. We finally got out about dark and he left before we got the car out. He walked or ran back to town. When Ronald and I got back to town, I let Ronald out near the projects when you come into Holly Grove on Highway 17. He got out of the car and got into the car with Spike, Tedrick Nunn. I went to try to find my mother and tell her what happened. I went to my house and the phone rang and I talked to her and told her what had happened. My mama told me to go turn myself in and that's what I was going to do when Bob stopped me.

## Statement of Marvin Jefferson

I was working on my car at my auntie's house when he and Ronald Foster came by. He asked me if I wanted to make the block and I asked him to take me to Virginia Keaton's so I could give her five dollars for letting me park my car at her house. I didn't realize anything was going on. I had not seen a gun or a mask up to this point. All I know is that all of a sudden, they stopped the car and jumped out.

Ronald Foster on the front passenger side, he had a black mask he pulled over his head. I heard some hollering, someone say, "Give me the money." I wanted to get out of the car and run, but I didn't want them shooting me. Then I heard some shooting, I think it was three or four shots. When they got back in the car, I asked them "What the — they were doing?" They were going through the bag, it was Ronald going through the stuff in the bag and some other guy was driving. When we got to the deep puddle of water the car slowed down, the car slowed down, Ronald was throwing shit out of the car. That's when I decided to jump out of the car and get away from them. I jumped out of the car and hit the field heading toward Holly Grove. They kept going, the car was going down the road from me. All I know is I didn't rob anyone. I was just in the wrong

place at the wrong time. I was wearing bright orange, and if I was going to do something like that I would not have been wearing bright orange where everyone could see me. I am telling the truth and I am a victim of circumstances.

* * *

In *Bruton v. United States*, 391 U.S. 123, 126 (1968), the United States Supreme Court held that a defendant is deprived of his right of cross-examination under the Confrontation Clause of the Sixth Amendment when a codefendant refuses to testify but the codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. Subsequently, in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the Court held that the Confrontation Clause is not violated by the admission of a non-testifying code-fendant's confession with a proper limiting instruction[1] when the confession is redacted to eliminate not only the defendant's name, but also any reference to his or her existence. In *Gray v. Maryland*, 523 U.S. 185, 195 (1998), the Court held that "redactions that replace a proper name with an obvious blank, the word "delete," a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." The Court has not addressed the issue of whether a non-testifying codefendant's statement is admissible when the defendant's name has been replaced with a pronoun.

 We begin by noting that *Bruton* is not directly on point because once Starr's statement was redacted, Jefferson was not specifically named in that statement. We also note that *Richardson* is distinguishable from the present case. In *Richardson*, the United States Supreme Court was asked to determine "whether *Bruton* requires the same result when the codefendant's confession is redacted to omit *any* reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." 481 U.S. at 202 (emphasis added). The Court noted that "[t]he confession was redacted to

---

[1] The judge specifically instructed the jury that the non-testifying codefendant's confession was not to be considered as evidence against the defendant. *See Richardson*, 481 U.S. at 205.

omit reference to the respondent — indeed, to omit all indication that *anyone*, other than [the other codefendants] participated in the crime." *Id.* at 203 (emphasis in original).

 Here, Starr's statement was not redacted to omit all reference to Jefferson. In fact, it is clear from the redacted statement that someone other than Starr and Foster participated in the crime. Thus, *Richardson* is inapplicable. What we must determine in this case, as Jefferson argues, is whether the United States Supreme Court's holding in *Gray* applies to the facts of this case. In other words, we must determine whether redactions that replace a proper name with a pronoun or an indefinite word are "similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." *See Gray*, 523 U.S. at 195.

Jefferson argues that replacing his name with a pronoun does not accomplish the directives of *Bruton* and *Gray* because the redactions served as indirect or veiled inferences to Jefferson and substantiated his existence and identity in the highly incriminating statement of Starr. The State disagrees and argues that our federal circuit court's decision in *United States v. Edwards*, 159 F.3d 1117 (8th Cir. 1998), *cert. denied*, 528 U.S. 825 (1999), is applicable here. In *Edwards*, the Eighth Circuit Court of Appeals held that the district court's decision to admit non-testifying defendant admissions, redacted as to codefendants by the use of "we," "they," "someone," and "others," and accompanied by appropriate limiting instructions, did not violate the rule set out in *Bruton*, and its progeny. The court wrote:

> Unlike use of the word "deleted," which directs the jury's attention to an obvious redaction, referring to joint activity by use of the pronouns "we" and "they," or by use of indefinite words such as "someone," does not draw attention to the redaction and thus, in most situations, will not be incriminating unless linked to a codefendant by other trial evidence. Here, for example, the evidence included references to a large cast of characters from the Marlborough neighborhood who were connected in various ways to the defendants. Some of the admissions inculpated nondefendants, thereby weakening any inference that words such as "they" and "someone" referred to the declarant's codefendants. With improper inferences thus weakened, it was appropriate to rely upon

the normal rule that juries are presumed to obey instructions to disregard the evidence as to codefendants.[2]

*Edwards*, 159 F.3d at 1126 (citation omitted).

We believe *Edwards* is distinguishable from the instant case. In that case, the Eighth Circuit Court of Appeals noted that the evidence included references to a "large cast of characters" connected to the defendants. Thus, the use of "they," "we," and "someone" would not draw attention to the redaction. Here, there was no "large cast of characters." The prosecution made clear in its opening statement that three individuals participated in the crimes, and two of those were on trial:

> A man gets out of the front seat with a mask on, starts shooting at the vehicle that Mr. Rawls is driving. After the man starts shooting, a man in the back seat gets out of the car and starts running up to the van also. Three (3) people. Two (2) people on trial today. Tyrell Starr and Martin [sic] Jefferson. . . .

> You're going to have to pay attention because these two men have given statements. . . . There's three (3) people involved, Ronald Foster's the shooter. The State concedes that . . . [Rawls] can tell you there are three (3) people involved. And, Ronald Foster's the shooter. . . .

> How can one man, Ronald Foster, shoot, drive the car, pick up the bag and get away? It's more than one person involved in this. It's three (3) men. Ronald Foster's not on trial today. These two men are on trial, Tyrell Starr and Marvin Jefferson.

* * *

As previously indicated, Rawls testified that three men were involved in the crimes. Starr's statement, written in first-person, refers to three individuals: "I," "Robert Foster," and another individual referred to as "he," "him," and "some guy." Clearly, "I" refers to Starr and, obviously, "Robert Foster" refers to Foster. Though Jefferson's name was not redacted with an

---

[2] The *Edwards* court noted that during the trial, the district court "repeatedly instructed the jury to consider each admission only against the declarant." *Edwards*, 159 F.3d at 1124.

obvious blank, the word "delete," or a symbol, as was the appellant's name in *Gray*, the teaching of *Gray* is that even redacted confessions can sometimes "obviously refer directly to someone, often obviously the defendant, and . . . involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Gray*, 523 U.S. at 196. Starr's statement, as admitted into evidence, obviously directly referred to Jefferson, an inference that the jury easily could have drawn from Jefferson's status as a codefendant and the State's concession that Foster was the shooter. We hold that the admission of Starr's redacted statement violated Jefferson's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

The State maintains that even if it were error for the circuit court to admit Starr's statement, reversal is not warranted because any violation of *Bruton* was harmless beyond a reasonable doubt because Jefferson admitted to being in the Cadillac when the crimes were committed. We reject the State's contention.

 The United States Supreme Court has explained that a violation of the *Bruton* rule may be harmless error if there is overwhelming evidence of the defendant's guilt. *See Harrington v. California*, 395 U.S. 250, 253 (1969). "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida*, 405 U.S. 427 (1972). Further, the Court has stated:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Cf. Harrington*, 395 U.S. at 254; *Schneble v. Florida*, 405 U.S. at 432.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

 In this case, Starr's statement was important to the prosecution's case, as it was the only evidence that Jefferson got out of the car and aided Foster in "shooting at the van." The only

evidence that was cumulative was that both Starr's statement and Jefferson's statement put Jefferson in the car at the time of the crimes. The mere presence of a person at the scene of a crime is not proof of his or her guilt. *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997). We do not agree with the State's contention that even if Starr's statement was excluded, there was still overwhelming evidence that Jefferson actively participated in the crimes. To conclude that a constitutional error is harmless and does not mandate reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *See Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Allen v. State*, 310 Ark. 384, 838 S.W.2d 346 (1992); *see also Chapman v. California*, 386 U.S. 18 (1967). We cannot conclude that the admission of Starr's statement is harmless error beyond a reasonable doubt.

Reversed and remanded.