21264

The STATE, Respondent, v. Ronald George LaBARGE, Appellant.
(268 S. E. (2d) 278)

*Thomas A. McKinney, Hugh L. Harrelson* and *Thomas A. Givens,* Rock Hill, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Brian P. Gibbes* and *Sally G. Young,* Columbia, and *Sol. William L. Ferguson,* York, *for respondent.*

July 21, 1980.

LITTLEJOHN, Justice:

Ronald George LaBarge was convicted of the murder and armed robbery of Julian Johnson and was sentenced to life imprisonment and twenty-five years, respectively. For the purposes of this appeal the facts surrounding Johnson's murder are not important and will not be detailed. We reverse, finding that errors occurred during trial which entitle LaBarge to a new trial.

Following an unsuccessful motion for a separate trial, LaBarge was ordered a trial along with a codefendant, Terry Lee Jackson. It was the theory of the State that Jackson fired the fatal shot and that LaBarge was present to assist. Among the evidence presented by the State was a confession given by Jackson which implicated LaBarge in the crimes. In accordance with the mandate of *United States v. Bruton,* 391 U. S. 123, 88 S. Ct. 1620, 20 L. Ed. (2d) 476 (1968), that the out-of-court confession of one defendant cannot be used against a codefendant, the statement was redacted in an attempt to exclude all direct references to LaBarge. It can be forcefully argued that the method of redacting was ineffective. Where the name "LaBarge" appeared, "Mister X" was substituted. In the light of other testimony "Mister X" pointed directly to LaBarge. After the presentation of the

State's case, Jackson changed his plea from not guilty to guilty. At that point, LaBarge moved that Jackson's' statement be withdrawn from evidence since it was no longer relevant in the trial of the only remaining defendant. The trial judge refused this request. No reference to the statement was made by the judge during his initial charge to the jury. However, at the conclusion of his supplemental charge, the judge stated:

"One other thing I want to tell you before I conclude my remarks, though, whenever you consider any written statement in this case, keep in mind that that statement can only be used against the defendant making it."

We believe that the trial judge erred in failing to remove Jackson's out-of-court statement from the record and to admonish the jury to disregard it, and erred in letting the statement go to the jury room as an exhibit. Once Jackson pled guilty and was no longer on trial, the statement was not relevant to any remaining issue. Under *United States v. Bruton, supra,* the statement could not have been used against LaBarge in any event. This error was compounded later when the trial judge allowed the jury, in the charge quoted above, to consider the statement. Jackson was no longer a defendant, so the trial judge's charge had the effect of bringing the statement to the jurors' attention while telling them they could not use it against LaBarge. These errors require us to grant LaBarge a new trial.

Since several exceptions raise issues which may arise again in the retrial of this case, we will address those matters for the guidance of court and counsel.

LaBarge asserts that the trial judge erred in denying his motion to sequester all of the State's witnesses. We do not agree.

"Whether witnesses are sequestered or not is a matter for the discretion of the trial judge." *State v. Hall,* 268 S. C. 524, 235 S. Ed. (2d) 112, 114 (1977).

We find no abuse of the trial judge's discretion. On the retrial of the case, LaBarge may renew his motion and attempt to show the desirability of sequestration to the judge.

Error is next asserted in that the trial judge refused to allow the criminal record of witness Gertrude Thomas into evidence. Thomas, the victim's daughter, admitted her participation in the crimes and pled guilty. Thomas's criminal record consisted of charges of public drunkenness, breach of peace, disorderly conduct, driving without a license, possession of an unlawful weapon, and trespassing. LaBarge asserts that, as the State's chief witness, Thomas's credibility was highly important and since her crimes evinced an attitude of social irresponsibility they could be used for impeachment purposes. We disagree.

In South Carolina, a conviction of a crime involving moral turpitude may be used to impeach the credibility of a witness. The traditional definition of moral turpitude is:

". . . an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or society in general, contrary to the accepted and customary right and duty between man and man. . . ." *State v. Horton,* 271 S. C. 413, 248 S. E. (2d) 263 (1978).

While all crimes involve some degree of social irresponsibility, all crimes do not involve moral turpitude. The crimes which are evidenced by Thomas's record do not fall within the above definition of moral turpitude. There was no error.

During the course of direct examination, LaBarge was asked, "Are you guilty of being involved in it [the crimes] in any way?" The State objected to the form of the question and the judge sustained the objection. We think LaBarge should have been allowed to answer the question, since it was, in effect, another way of asking if he had committed the crimes.

LaBarge was asked in cross-examination, "That's as true as the rest of your testimony?" Upon objection, the State withdrew the question, Notwithstanding the withdrawal, the judge stated that the question was proper on cross-examination and allowed the State to repeat the question. We believe the better procedure would have been for the judge to have allowed the withdrawal of the question.

In the course of his jury charge relating to one aiding and abetting, the trial judge stated:

". . . if the unlawful act is committed, the act of one is the act of all. And all are presumed to be present and guilty, for this would be in pursuance of a common purpose in a common cause, with them each operating at a station at one and the same instance to arrive at a common goal. . . ."

We think he erred when he said, ". . . all are presumed to be present and guilty." As this court has previously noted:

"All presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved to be guilty." *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96 (1968).

The presumption of innocence should not be diluted by other remarks in a charge. While we believe the above-quoted statement was inadvertent, it should be carefully avoided in future trials.

Other alleged errors are not likely to occur on the retrial of this case and, accordingly, are not discussed.

Reversed and remanded.

LEWIS, C. J., and GREGORY and HARWELL, JJ., concur. NESS, J., dissents.

NESS, Justice (dissenting):

I agree the failure to withdraw Jackson's statement from the jury's consideration was error. I do not view it under

the circumstancse here as reversible error. The possibility or probability of prejudice is not the test to be applied when the evidence of guilt as in this case is overwhelming.

I would hold that the failure to withdraw the exhibit was harmless error in the sense that the evidence of guilt was so overwhelming that LaBarge could not have been prejudiced in the jury's mind. Moreover appellant initially consented to the redaction of the statement and in any event its admission was discretionary.

"Whether a codefendant's confession implicating a defendant can be effectively redacted so as to delete portions implicating the defendant and permit its introduction in a joint trial is for the trial court to determine." *U. S. v. Mitchell*, 372 F. Supp. 1239 (D. C. N. Y.), appeal dismissed, *Stans v. Gagliardi*, 485 F. (2d) 1290 (2nd Cir. 1973).

Here, the testimony of the witness Gertrude Thomas was the State's primary and principal evidence against appellant. She voluntarily confessed to her participation in her father's murder as well as that of Jackson and LaBarge. She included appellant in the planning and placed him at the scene. She testified appellant and Jackson went into the house to rob her father while she remained outside in the car.

With the exception of Jackson's confession placing appellant at the front door of the house during the commission of the crime, the confession was merely cumulative to Gertrude Thomas' testimony and was harmless error. *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. (2d) 705 (1969).

As this Court stated in *State v. Robinson*, 238 S. C. 140, 151, 119 S. Ed. (2d) 671, 677 (1961):

"[T]he only rational conclusion warranted by the evidence is that the accused is guilty, the judgement of conviction

should not be set aside because of unsubstantial errors not affecting the result."

In applying the harmless error test, we must consider the character and quality of the improper evidence as it relates to the other evidence bearing on the same issue, appraising the possible impact upon the jury of the inadmissible evidence. *Schneble v. Florida,* 405 U. S. 427, 92 S. Ct. 1056, 31 L. Ed. (2d) 340 (1972); *State v. Atchison,* 268 S. C. 588, 235 S. E. (2d) 294 (1977).

The U. S. Supreme Court in interpreting the *Chapman* rule in *Harrington v. California,* 395 U. S. 250, 89 S. Ct. 1726, 23 L. Ed. (2d) 284 (1969) affirmed the California Court of Appeals which held:

"[I]t is not reasonably probable that a result more favorable to defendant would have been reached had the [*Bruton*] rule been followed."

The Court in *Harrington* held that the illegal evidence had been "cumulative" and that the State's case against Harrington had been "so overwhelming." This opinion suggests that *Chapman* now embraces an overwhelming evidence test for determining when an error is harmless.

I have no difficulty in concluding beyond a reasonable doubt that the alleged error did not influence the verdict.

I would affirm.