734 S.E.2d 167

**The STATE, Respondent,**

v.

**Derrick McDONALD, Appellant.**

**Appellate Case No. 2008–104547.**

**No. 5033.**

Court of Appeals of South Carolina.

Heard June 19, 2012.

Decided Sept. 12, 2012.

Rehearing Denied Nov. 30, 2012.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Melody Jane Brown, all of Columbia, and Solicitor Daniel E. Johnson, of Columbia, for Respondent.

SHORT, J.

Derrick McDonald appeals from his convictions of murder and burglary in the first degree. He argues the trial court erred in admitting the statement of his non-testifying co-defendant, given to a law enforcement officer during the course of the investigation, without adequately redacting the portions of the co-defendant's statement implicating McDonald because it denied him of his right to confront and cross-examine the witness. We affirm.

## FACTS

Josh Zoch died from multiple blunt force trauma to his head after being beaten with a baseball bat the night of December 12, 2006. Zoch, McDonald, Christopher Whitehead, and Robert Cannon all worked at the same Sonic Restaurant at one time. McDonald and Cannon both gave statements to police admitting their and Whitehead's involvement in the murder. Cannon told the police they had beaten Zoch to punish him for being a "snitch."[1] Whitehead told the police he did not know a "damn thing" about Zoch's murder.

McDonald, Whitehead, and Cannon were tried together as co-defendants in May 2008. None of the three co-defendants testified at trial. The jury found all three guilty, and the trial court sentenced Cannon and McDonald each to two concurrent terms of thirty-five years imprisonment for murder and first-degree burglary. The court sentenced Whitehead to two concurrent sentences of life without parole for murder and first-degree burglary.[2] This appeal followed.

## LAW/ANALYSIS

McDonald argues the trial court erred in allowing Cannon's written statement into evidence without adequately redacting the portions of the co-defendant's statement implicating McDonald because it denied him his right to confront and cross-examine the witness. We disagree.

"The Confrontation Clause of the Sixth Amendment, which was extended to the states by the Fourteenth Amendment, guarantees the right of a criminal defendant to confront witnesses against him, and this includes the right to cross-examine witnesses." *State v. Holder*, 382 S.C. 278, 283, 676 S.E.2d 690, 693 (2009); *see* U.S. Const. amends. VI and XIV. In *Crawford v. Washington*, 541 U.S. 36, 50–51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that testimonial out-of-court statements are not admissible under

---

1. Throughout the trial, it was mentioned that Zoch was a police informant who had committed at least one first-degree burglary.

2. The trial court sentenced him to life without parole pursuant to section 17–25–45 of the South Carolina Code because of his 2005 guilty plea to attempted armed robbery. S.C.Code Ann. § 17–25–45 (Supp. 2011).

the Confrontation Clause unless the witness is unavailable and the defendant had prior opportunity to cross-examine the witness.

In *Bruton v. United States,* 391 U.S. 123, 126–137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held a non-testifying co-defendant's confession that inculpates another defendant is inadmissible at their joint trial, even if the jury is instructed that the confession can only be used as evidence against the confessor, because of the substantial risk that the jury would look to the incriminating extrajudicial statements in determining the other's guilt. In *Richardson v. Marsh,* 481 U.S. 200, 207–08, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court clarified the rule announced in *Bruton* is a "narrow" one that applies only when the statement implicates the defendant "on its face," and the rule does not apply to statements that only become incriminating when linked to other evidence introduced at trial, such as the defendant's own testimony. In *State v. Evans,* 316 S.C. 303, 307, 450 S.E.2d 47, 50 (1994), our supreme court held *Bruton* did not bar a statement that "on its face" did not incriminate Evans even though its incriminating import was certainly inferable from other evidence that was properly admitted against him.

The *Richardson* court also noted *Bruton* can be complied with by the use of redaction:

> Even more significantly, evidence requiring linkage differs from evidence incriminating on its face in the practical effects which application of the *Bruton* exception would produce. If limited to facially incriminating confessions, *Bruton* can be complied with by redaction—a possibility suggested in that opinion itself. If extended to confessions incriminating by connection, not only is that not possible, but it is not even possible to predict the admissibility of a confession in advance of trial.

*Richardson,* 481 U.S. at 208–09, 107 S.Ct. 1702 (citation omitted); *see State v. Page,* 378 S.C. 476, 482, 663 S.E.2d 357, 359 (Ct.App.2008) (stating redaction has come into play as a tool to allow admission of a co-defendant's confession against the confessor in a joint trial because it permits the confession to be used against the non-testifying confessor, while avoiding

implicating the co-defendant). However, in *Gray v. Maryland*, 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the Supreme Court noted the *Richardson* decision limited the scope of *Bruton* to instances where the reference to the defendant was on the face of the statement; therefore, a statement that substituted blanks and the word 'delete' for the petitioner's proper name falls within the class of statements to which *Bruton's* protections apply. The court explained:

> Redactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result.

*Id.* at 192, 118 S.Ct. 1151. Further, this court has held the "Confrontation Clause is not violated when a defendant's name is redacted but other evidence links the statement's application to the defendant, if a proper limiting instruction is given." *Page*, 378 S.C. at 482, 663 S.E.2d at 359.

■ At trial, the State argued replacing the co-defendants' names in Cannon's written statement with "another person" would resolve any confrontation problem.[3] Cannon's attorney objected on behalf of all three co-defendants, arguing the limited redaction would not satisfy *Bruton* and *State v. LaBarge*, 275 S.C. 168, 268 S.E.2d 278 (1980), "because the statement clearly implicates someone else and it's obviously prejudicial to the people who are sitting right here." Further, he stated "there's an easier way to do it, which is simply to not put a reference to what someone else did." The following colloquy occurred between Cannon's attorney and the judge:

> **The Court:** But that's not the law.... We've been over this. I mean, I've been over this many times. And the courts have said when replacing the offensive language with "the other person," "the other guy" or "we" or "they" when there's no reference, specific reference to a co-defendant, it satisfies *Bruton.*

---

3. Following a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing, the judge ruled Cannon's statement was admissible.

**Mr. Kendrick:** Your Honor, and I understand that. I am just arguing my position for this record, is that that [sic] does not satisfy *Bruton*. I know you're ruling I'm wrong, but I have to put it on the record.

The judge ruled in favor of the State. Counsel renewed their objections when the State introduced Cannon's statement into evidence.

In summary, Cannon stated he and at least two others decided to "beat [Zoch's] ass because he is a snitch." The group arrived at Zoch's house at approximately 11:30 p.m. on December 12, 2006, and "busted" the side door in, finding Zoch asleep on the couch. Cannon's statement, when redacted, read:

[W]e went to Sonic. I had on a ski mask ... We then left Sonic and went to the Two Notch Walmart [sic] and another person got a ski mask. So we went riding and another person said [']you know we need to do something with these ski mask[s'], and I ask, and another person ask [']like what?['] and another person said [']like beat [Zoch's] ass because he's a snitch['] and I told another person I didn't think he was a snitch. Another person then ask if me and another person wanted to ride and we said whatever.... That was about 11 pm.... We pulled up to [Zoch's] about 11:30 pm.... Another person went to the side door and another person busted it in.... [Zoch] was asleep on the couch and another person yelled [']hey Bitch,['] and when [Zoch] looked up, another person hit [Zoch] with a glass lamp. Right after that ... another person drag[ged] him off the couch part of the way. Then another person started pressuring another person to hit [Zoch] with the bat that was in the house and another person then hit [Zoch] in the back of [his] head. After that [Zoch] was basicly [sic] crawling trying to get up ... At that time another person kicked [Zoch] in the ribs and ask[ed] [Zoch] where the weed was and [Zoch] was just grunting. That[s] when another person ask[ed] me to check the room and we started pulling draws [sic] and another person flipped the mattress ... Then [Zoch] went unconscious and I got [Zoch] a towel and put it to his head. Another person said, [']fuck, we don't have anything['] and pushed the Christmas tree over on [Zoch]. Another person then got mad again and took the

house phone. But before another person left, he got some frozen chicken from the freezer and put it on [Zoch]'s head to try and stop the bleeding. After that we went back out the same way we came in.

Cannon also answered some questions in his statement:

Q. Did you[,] another person[,] and another person have on gloves?

A. Yes.

Q. What kind of gloves?

A. Purple latex and I had on 2 pair WHT [sic] and purple ones on top.

Q. Where was the bat from that was used to hit [Zoch]? A. It was in [Zoch's] house. I just looked over their [sic] and another person picked it up.

Q. What were you[,] another person[,] and another person wearing that night?

A. Black pants and shirts and ski mask.

Q. What color was the ski mask?

A. Mine was black and theirs was [sic] black or dark blue.

The court also gave the jury a limiting instruction:

Now, some of the evidence in this case may have been admitted solely because of its relationship to the case against one of the defendants. This evidence cannot be considered in the case of any of the other defendants.

On appeal, McDonald argues that given the context of the record, Cannon's written statement clearly implicated him as a person involved in the burglary and murder of Zoch. Therefore, its admission violated his rights under the Confrontation Clause. He argues this case is similar to *LaBarge*, 275 S.C. 168, 268 S.E.2d 278. In *LaBarge*, the State presented a confession given by his co-defendant that implicated LaBarge in the crimes and, in accordance with *Bruton*, the statement was redacted in an attempt to exclude all direct references to LaBarge. *Id.* at 170, 268 S.E.2d at 279–80. Where the name "LaBarge" appeared, "Mister X" was substituted; however, in light of other testimony, "Mister X" pointed directly to La-Barge. *Id.* at 170, 268 S.E.2d at 280. Regardless, the court did not specifically hold the redaction would not have satisfied *Bruton*, but simply stated, "It can be forcefully argued that

the method of redacting was ineffective." *Id.* Similarly, in *State v. Holder,* 382 S.C. 278, 285–86, 676 S.E.2d 690, 694 (2009), our supreme court found the substitution of Holder's name with the pronoun "she" was insufficient to obscure her identity because the jury could readily determine the statement referred to her as she was the only female defendant. The court held the redaction was analogous to that in *Gray* because, despite the redaction, it was apparent the co-defendant was referring to Holder, and the inference was one that could be made even without reliance on the other testimony developed at trial. *Id.* Therefore, the court found the admission of the redacted statement violated Holder's rights under the Confrontation Clause because her co-defendant did not testify and was not subject to cross-examination. *Id.* at 286, 676 S.E.2d at 694.

In contrast, in *United States v. Akinkoye,* 185 F.3d 192, 198 (4th Cir.1999), the Fourth Circuit Court of Appeals held the defendants were not prejudiced because the confessions were retyped to replace the defendants' respective names with the neutral phrases "another person" or "another individual." Also, in *United States v. Vogt,* 910 F.2d 1184, 1191–92 (4th Cir.1990), the Fourth Circuit Court of Appeals held that a redacted statement, in which the co-defendant's name was replaced with the word "client," did not on its face impermissibly incriminate the co-defendant even though the incriminating import was inferable from other evidence. The court further stated that even though it may not be easy for a jury to obey the cautionary instruction, " 'there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton* 's *[rule]*." ' *Id.* at 1192 (quoting *Richardson v. Marsh,* 481 U.S. at 208, 107 S.Ct. 1702).

We find that the neutral phrase "another person" inserted into Cannon's statement avoided any *Bruton* violation. The redacted statement only implicates the statement's maker, and it does not limit the participants to three, which would implicate the three defendants on trial. Further, the court gave the jury a limiting instruction. Therefore, we find the trial court properly allowed Cannon's redacted statement into evidence.

McDonald also argues Cannon's written statement was a violation of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct.

1354, 158 L.Ed.2d 177 (2004), because the statement was given during the course of an investigation, and McDonald did not have an opportunity to confront and cross-examine Cannon.

Counsel for Cannon argued for all three co-defendants concerning redacting Cannon's written statement to the police. Counsel's argument was based on *Bruton* and did not mention *Crawford v. Washington.* Counsel did not raise a *Crawford* violation until hundreds of pages later in the transcript in regard to an oral statement made by Cannon during a polygraph exam. The judge noted this was the first time *Crawford* was mentioned, and Cannon's previous redacted statement had already been admitted. Counsel stated, "[F]or the record, I'm going to go ahead and put on the record that the other statements should have been suppressed due to *Crawford*, too." Because the *Crawford* issue was not raised when Cannon's written statement was redacted and admitted, this issue is not preserved for our review. *See State v. Hoffman,* 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) ("A contemporaneous objection is required to properly preserve an error for appellate review."); *State v. Burton,* 326 S.C. 605, 609, 486 S.E.2d 762, 764 (Ct.App.1997) ("Failure to object when the evidence is offered constitutes a waiver of the right to object."); *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (holding an issue is not preserved for appeal where one ground is raised below and another ground is raised on appeal).

## CONCLUSION

Accordingly, McDonald's convictions for murder and burglary in the first degree are

**AFFIRMED.**

HUFF, J., concurs.

FEW, C.J., concurs in a separate opinion.

FEW, C.J., concurring:

I concur in the majority opinion insofar as it holds that the use of the term "another person" satisfied the requirements of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, I disagree with the majority's treatment of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* relates to the question of whether the Sixth Amendment right of confrontation is implicated by a particular statement. *See State v. Ladner*, 373 S.C. 103, 111, 644 S.E.2d 684, 688 (2007) (recognizing that *Crawford* held the confrontation clause is implicated *if* the statement is testimonial). The State agrees Cannon's statement is testimonial, and therefore McDonald had the right to confront Cannon. In my opinion, therefore, the *Crawford* issue the majority holds is unpreserved was never an issue at all, and there is no need to discuss *Crawford*. The question is properly analyzed under *Bruton*.