754 S.E.2d 508

**The STATE, Respondent,**

v.

**Davontay HENSON, Appellant.**

Appellate Case No.2011–204008.

No. 27354.

Supreme Court of South Carolina.

Heard Nov. 6, 2013.

Decided Jan. 22, 2014.

Rehearing Denied March 6, 2014.

Appellate Defender Susan B. Hackett, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Brendan J. McDonald, all of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

Justice HEARN.

The central issue in this case is whether the admission of his codefendant's redacted confession during a joint trial violated appellant Davontay Henson's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We find the admission of the redacted confession violated the Confrontation Clause because the jury could infer from the face of the confession that it referred to and incriminated Henson. Accordingly, we reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Maurice Jackson, Tyrone King, and Kenny Cunningham were sitting on the front porch of Jackson's home one evening in Rock Hill, South Carolina. A woman and a man wearing a mask walked into the yard and towards the porch. The man stopped and the woman walked up the stairs and onto the porch. As the man removed a firearm from his clothing, the

woman announced it was a robbery and demanded Jackson, King, and Cunningham's possessions. After she collected their possessions, the perpetrators began to walk away. Suddenly, the man turned and began firing his weapon at the victims. The two then fled. Cunningham was struck in the leg and foot. King was hit in the head and later died from the wound.

Investigating the crime, the police focused on Donta Reid. They brought him in for questioning and over the course of the investigation he gave four confessions to the police. In the confession at issue here—the fourth—Reid implicated himself, Henson (nicknamed B'More), Samanatha Ervin (nicknamed Sam), and Aileen Newman (nicknamed LeLe) as the perpetrators, and stated Henson was the shooter.[1] His statement detailed the crimes from when the four first began discussing committing a robbery to their flight and Reid's first encounter with the police.

Henson, Reid, Ervin, and Newman were all arrested and charged with murder, assault and battery with intent to kill (ABWIK), criminal conspiracy, armed robbery, and possession of a firearm during the commission of a violent crime. Ervin and Newman pled guilty, and Henson and Reid proceeded to a joint trial.

At the outset, Henson moved for a severance. In support, he argued he and Reid would present antagonistic defenses and the State would presumably offer Reid's fourth confession as evidence. He asserted Reid would likely not testify pursuant to the Fifth Amendment and thus, he would not be able to cross-examine Reid about the confession. Therefore, he contended the admission of Reid's fourth confession would violate his Confrontation Clause rights.

The State opposed the motion on the grounds of judicial economy and lack of prejudice and offered a redacted version of Reid's confession as a solution to the Confrontation Clause

---

1. In the first and second statements Reid implicated himself and Darius Jeter—also known as "Duke"—in the crimes and stated Jeter was the shooter. In the third statement Reid continued to implicate himself and Jeter, added Ervin as an additional conspirator, and continued to assert Jeter was the shooter. The fourth statement made clear that Jeter was not involved.

problem. In the redacted statement, Henson's name was replaced with "the guy," "he," and "him," and a statement about picking Henson out of a photo lineup was removed entirely. The circuit court ruled the redacted statement did not incriminate Henson on its face and therefore, its admission would not violate the Confrontation Clause. Finding the confession to be the sole basis for the motion to sever, the court also denied that motion.

At trial, the two surviving victims testified that on the night of the crimes Reid came to Jackson's home and borrowed his phone to make a call during which Reid was heard to say there were "two of them." Approximately fifteen to thirty minutes later, a man and woman walked into the yard and robbed them. As the two began to walk away from the home, the woman said to the man that the victims had seen her face and that he needed to go back and shoot them. The man then turned around and opened fire on the victims, after which he and the woman fled. The victims were generally unable to identify the perpetrators beyond describing them as an African–American male with dreadlocks and an African–American female both appearing to be in their twenties. However, Jackson testified that the man spoke with a Baltimore accent.

Ervin and Newman also testified at the trial and detailed Reid's, Henson's, and their own participation in the crimes. Both identified Henson as the shooter and testified that he was from Baltimore. They also both testified they entered into a plea deal with the State whereby they agreed to testify in exchange for the State dismissing several charges and recommending a sentencing range.

In addition to the victims and coconspirators, several other witnesses testified. A man riding his bike on Jackson's street on the night of the crimes testified he witnessed the crimes, but he was not able to identify the perpetrators other than that they were a man and a woman. An individual who knew the four conspirators and was in the area that night testified that he was near Jackson's home when a truck stopped with Ervin driving and Reid in the bed of the truck. He spoke to Ervin and Reid, but was unable to see whether there were any other occupants of the truck. Finally, two individuals who were with the four conspirators at a home on the night of the

crimes testified that the four left at one point and were gone for approximately forty-five minutes to an hour.

Finally, several police officers testified as to their investigation of the crime, among them Detective Leslie Herring who took Reid's fourth confession. Over Henson's objection, Herring was permitted to read the redacted version of Reid's fourth confession to the jury and it was entered into evidence. The redacted confession reads:

> I have earlier made statements to the police officers about what happened the night that Tyrone King, who I call Banks was shot. I told parts of the truth because I had been threatened by the guy that done the shooting. The night this happened it was me, the guy that did the shooting and LeLe over at Samantha's house on Keels Ave. Sam and the guy left and when they got back, the guy had a rifle and he was loading it up. The rifle was black and brown in color and was about 3 feet long. It had white tape around the butt of the gun. I assumed that Sam and the guy had went and got the gun because he didn't have it before they left and they said they were going to go get something. It was already dark and we were all standing around outside and Sam told him to take the gun in the house and he did. He took it to Sam's room. We all went up there too and I wanted to be noisy and see what gun looked like. [sic] The guy was holding the gun and he said he was wanting to let it rip. He said that it was automatic. He asked me if I wanted to walk with him because he had said something about robbing somebody. I didn't want to go because I didn't know where he was going to put the gun. He said that he was going to put it in his pants. I told him I didn't want to go. He asked Sam if she wanted to go somewhere. She asked him where and he said anywhere that he could make a lick.[2] Me, Sam, LeLe and the guy got into Sam's grandfather's truck, a small truck. I got in the bed and LeLe and the guy got in the cab with Sam and Sam drove. As we were leaving I saw Duke, who is Darius Jeter, walking near Sam's house. He tried to flag us down but we kept on going. We rode around a little bit and went to Sam's mother's house. I asked Sam to take me home so I

---

2. The evidence at trial established that "a lick" is slang for "a robbery."

could use the bathroom. I called Maurice on Sam's phone on the way to my house. I was going to smoke with him and when I asked if he wanted to, he said yes. I told Maurice I would call him when I got home. Sam asked me if Maurice had any money or did he sell weed. I told her that he did sell weed and he might have some money. Sam asked me if I would set Maurice up. I told her that I really don't want to, but I can. When we got to my house, Sam told me to call Maurice when I got inside and find out who all was with him at his house and then to call her back. I went to the bathroom and I tried to call Maurice from my house phone, but he wouldn't pick up his cell phone, so I walked to his house. He only lived a couple of houses from me on Byers St. When I got there Maurice was there along with Tryone King and Kenny. I asked Maurice to use his cell phone to call Sam to let her know that there was two other people with Maurice. I then asked Maurice to walk with me to Midtown, but he wouldn't. While I was on the porch with Maurice, Sam drove by 3–4 times and Maurice said why does this truck keep coming by. I walked off the porch and when I got to the end of Byers St. I made a left on Maple St. and Sam was driving down Byers St. and when she saw me she made a left turn on Maple St. too. The guy and LeLe then got out after Sam stopped. I told LeLe that there was 3 people since Maurice wouldn't walk with me. The guy then said "fuck it, I might as well run up on the porch and robbed [sic] all three of them." Sam had drove over to Reynolds St. and parked on the dirt road to the left after the bridge. The guy asked me which house they were at and what did it look like. I told him that they were all on the porch. The guy had the rifle and him and LeLe walked towards Maurice's house. I walked to where Sam was parked. I knew where she was going to be because she told us where she was going to park. I got in the truck with Sam and we sat there for maybe 5 minutes and then heard a bunch of shots. Sam pulled off and picked up that guy and LeLe at the bridge. The guy got inside the truck with me and Sam and LeLe got in the bed. We all went back to Sam's house. We started talking about the situation and LeLe said that she was the one that asked the guys for weed. The guy started saying he didn't want anyone to

snitch on him and that if anybody did snitch he would come back and get them. I got a call on Sam's house phone from my step-dad telling me that Tyrone and Kenny had been shot. That guy and LeLe left in the truck and LeLe drove. I believe that he took the rifle with him and LeLe came back a little while later by herself. I stayed all night at Sam's and when I woke up Sam had gotten a text message saying that Tyrone had died. My step-dad called again and told me that the police had been by the house and wanted to talk with me. I walked home and called the number the officer had left.

Reid and Henson neither testified nor presented any other evidence. Henson was convicted on all of the charges against him—murder, ABWIK, conspiracy, three counts of armed robbery, and five counts of possession of a firearm during the commission of a violent crime.[3] He was sentenced to life imprisonment for the murder charge, twenty years for the ABWIK charge, five years for the conspiracy charge, thirty years for each of the armed robbery charges, and five years for each of the firearm possession charges, all to run concurrently.

## LAW/ANALYSIS

■■■ The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. This constitutional right, which applies to the states through the Fourteenth Amendment, guarantees a defendant in a criminal trial the right to cross-examine the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403–04, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In a joint trial, the admission of a nontestifying codefendant's confession that implicates a defendant violates the defendant's Confrontation

---

3. Reid, indicted on the same charges, was convicted on three counts of armed robbery, three counts of possession of a firearm during the commission of a violent crime, and one count of conspiracy. He was found not guilty on the murder charge. On the ABWIK charge he was convicted of the lesser included offense of assault and battery of a high and aggravated nature.

Clause rights. *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Historically, instructing the jury to consider a confession as only evidence against the confessing codefendant was considered sufficient under the Confrontation Clause, but in *Bruton* the United States Supreme Court dispensed with that fiction. *Bruton,* 391 U.S. at 135–36, 88 S.Ct. 1620. It found "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135, 88 S.Ct. 1620. The Court concluded the admission of a confession without the ability to cross-examine the confessor was just such a situation, reasoning "[n]ot only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others." *Id.* at 136, 88 S.Ct. 1620. While appearing to establish a bright-line rule against the admission of a codefendant's confession which incriminates a defendant, the Court acknowledged there are alternatives which may allow the admission of a confession while still protecting a defendant's Confrontation Clause rights and in a footnote, mentioned redaction as one of those alternatives. *See id.* at 133–34 & n. 10, 88 S.Ct. 1620.

Since *Bruton,* the Supreme Court has twice revisited this issue in order to determine what constitutes sufficient redaction so as to protect a defendant's Confrontation Clause rights. In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court was called upon to decide whether the Confrontation Clause is violated "when the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." *Id.* at 202, 107 S.Ct. 1702. The Court ultimately held the Confrontation Clause is not violated by the admission of a codefendant's confession where a limiting instruction is given and "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. 1702. In a footnote appended to that

holding, the Court declined to express any opinion "on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. 1702.

The Supreme Court most recently addressed the issue in *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), in which a codefendant's confession was redacted by the insertion of "deleted" or "deletion" when the confession was read to the jury and the insertion of blank spaces in the written document wherever the petitioner's name appeared. *Id.* at 188, 118 S.Ct. 1151. The Court held that obviously redacted confessions so closely resemble unredacted confessions in their incriminating effect that they too are barred by *Bruton.* *Id.* at 192, 118 S.Ct. 1151. The Court reasoned that "a jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant" and offered as an example:

> Consider a simplified but typical example, a confession that reads "I, Bob Smith, along with Sam Jones, robbed the bank." To replace the words "Sam Jones" with an obvious blank will not likely fool anyone. A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with, robbed the bank," refers to defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank. A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

*Id.* at 193, 118 S.Ct. 1151. Therefore, the Court concluded that the alterations performed the same accusatory function as using the defendant's name. *Id.* at 193–94, 118 S.Ct. 1151.

Acknowledging that *Richardson* limited *Bruton* to facially incriminating confessions and placed confessions that "incriminate inferentially" outside *Bruton,* the Court distinguished *Richardson* on the basis that unlike the confession there, the confession admitted in *Gray* "refer[ed] directly to the 'existence' of the nonconfessing defendant." *Id.* at 192, 118 S.Ct. 1151. The Court clarified that *Richardson* did not turn on whether the confession admitted required an inference in order to incriminate the defendant, but on the kind of inference required. *Id.* at 196, 118 S.Ct. 1151. Ultimately, the Court held:

> The inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face, in *Richardson's* words, *"facially* incriminat[es]" the codefendant.

*Id.* at 196, 118 S.Ct. 1151 (alteration in original). In other words, the Court brought within Bruton's prohibition those confessions which facially incriminate through inference.

■ *Gray* did not directly address confessions redacted through the use of neutral pronouns as was done here. However, following *Gray,* in *State v. Holder,* 382 S.C. 278, 676 S.E.2d 690 (2009), this Court held, consistent with many other courts considering the issue, that even a confession redacted through the use of neutral pronouns violates the Confrontation Clause if it facially incriminates a nonconfessing codefendant. *Id.* at 285–86, 676 S.E.2d at 694. This follows directly from Gray where the holding turned on the fact that despite redaction the statements were "directly accusatory" and "obviously refer[ed] directly to someone, often obviously the defendant." *Gray,* 523 U.S. at 194, 196, 118 S.Ct. 1151. In short, where redacted confessions use neutral pronouns which facially refer to a codefendant, they violate the Confrontation Clause.

In *Holder,* the appellant and a man she was living with were charged with homicide by child abuse for the death of the appellant's child and tried jointly. *Holder,* 382 S.C. at 281–82,

676 S.E.2d at 692–93. At trial, the man's redacted statement to the police that "he felt like she had been inflicting" injuries on the child was admitted into evidence. *Id.* at 283, 676 S.E.2d at 693. The Court held the redacted statement violated the Confrontation Clause because it was apparent the statement was referring to the appellant even without considering any other evidence introduced at trial. *Id.* at 285–86, 676 S.E.2d at 694.

We find this case comparable to *Holder*. We also find persuasive the holdings of courts in other jurisdictions that redactions similar to the one at issue here violate the Confrontation Clause. In *United States v. Richards*, 241 F.3d 335 (3d Cir.2001), the appellant and a codefendant were tried jointly for robbing an armored car and the codefendant's redacted confession was admitted into evidence. *Id.* at 341. The redacted confession did not refer to the appellant by name but referred to him as the codefendant's "friend." *Id.* The court held the "reference to his 'friend' was just as blatant and incriminating of [the appellant] as the word 'deleted' in the *Gray* case." *Id.* The court explained that the confessor's statement "referred to the existence of three participants in the crime—[the confessor], the 'inside man,' and 'my friend.' Since the 'inside man' was easily identified as the driver of the Brink's van, the reference to 'my friend' sharply incriminated [the appellant], the only other person involved in the case." *Id.* Thus, knowing only who the parties were and the fact that the appellant sat before them as a defendant, the jury would likely infer that the statement referred to the appellant as a participant in the crime. Therefore, the confession directly implicated the appellant and violated the Confrontation Clause. *See id.*

In *Stanford v. Parker*, 266 F.3d 442 (6th Cir.2001), the petitioner was tried jointly with a coconspirator. *Id.* at 449. His codefendant's confession was redacted to replace the petitioner's name with "the other person" and then read into evidence by a detective. *Id.* at 456. On appeal of the denial of his habeas corpus petition, the court held the redaction would not have prevented the jury from inferring that the confession referred to the petitioner and thus, the admission of the confession violated the Confrontation Clause. *Id.* at 457. The court reasoned the jury would make the inference be-

cause the petitioner "sat as a defendant before the jury" and the confession was offered into evidence by the prosecution which the jury knew was seeking the petitioner's conviction. *Id.*

Finally, the Arkansas Supreme Court addressed a similar issue in *Jefferson v. State,* 359 Ark. 454, 198 S.W.3d 527 (2004), where three individuals robbed a bank courier, one pled guilty, and the other two were tried jointly. *Id.* at 529–30. A codefendant's confession was admitted into evidence after changing the appellant's name therein to "he," "they," or "some other guy." *Id.* at 530–31. The court found it was clear from the redacted statement that a third person participated in the crime. *Id.* at 535. The court concluded the confession "obviously directly referred to [the appellant], an inference that the jury easily could have drawn from [the appellant's] status as a codefendant and the State's concession that [the codefendant] was the shooter." *Id.* at 536. Accordingly, it held the admission of the confession violated the Confrontation Clause. *Id.*

■ Like *Holder* and these cases from other jurisdictions, here the jury could infer from the face of Reid's confession without relying on any other evidence, that the confession referred to and incriminated Henson. In his opening statement the solicitor asserted that four individuals—Henson, Reid, Ervin, and Newman—committed the crimes and that Henson was the shooter. Reid's redacted confession was offered into evidence by the solicitor. It identified three individuals by name as committing the crimes and acknowledged that another male participated and fired the fatal shots, but left that person unnamed. The jury likely would infer that Henson—a male, seated before them as a defendant, and the only defendant not named in the confession—was the fourth individual and the shooter referenced in Reid's confession. The jury also could presume the solicitor would not both assert that Henson was the fourth conspirator and offer the confession into evidence if the solicitor believed the confession referred to anyone other than Henson.

■ While Confrontation Clause violations are subject to harmless error analysis and the State would have us declare the error here harmless, we cannot do so. Before an error

can be held harmless, a court must find the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). That requires a court to determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *see also State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) ("Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained."). In the context of Confrontation Clause violations through the admission of a codefendant's confession, the harmless error standard has been formulated as: "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

 Here, we cannot say the admission of Reid's confession did not contribute to the verdict, nor can we say the evidence against Henson was overwhelming or the prejudicial effect of Reid's confession was insignificant. Other than the coconspirators, no witness was able to identify the shooter. The surviving victims, Jackson and Cunningham, were able to describe the shooter as a black male with a Baltimore accent, which matches Henson but is hardly overwhelming evidence. Additionally, no physical evidence linked Henson to the crimes. The only evidence other than Reid's confession actually identifying Henson as a conspirator was the testimony of Ervin and Newman. However, Ervin and Newman both faced charges for their participation in the crimes and thus, had an incentive to downplay their involvement and shift blame onto others. Therefore, we conclude the error was not harmless.

While severing trials certainly impacts judicial economy and State resources, these factors should not take precedence over the protection of a defendant's constitutional rights. Here, unless Reid's confession could be redacted in such a way that Henson was not implicated, the only alternatives were to not admit the confession or to grant Henson's motion to sever.

## CONCLUSION

The admission of Reid's redacted confession violated Henson's Confrontation Clause rights and was not harmless error. Accordingly, we reverse and remand for a new trial.[4]

TOAL, C.J., PLEICONES, BEATTY, and KITTREDGE, JJ., concur.

---

4. Henson also appealed the circuit court's removal and replacement of a juror due to the juror's independent knowledge of the case without the court first questioning the juror. Because the Confrontation Clause issue is dispositive, we decline to consider this additional issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding that where one issue is dispositive it is not necessary to consider any remaining issues).