# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Derrick McDonald, Petitioner.

Appellate Case No. 2012-213686

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Kershaw County
G. Thomas Cooper, Jr., Circuit Court Judge

---

Opinion No. 27515
Heard December 11, 2014 – Filed April 22, 2015

---

## AFFIRMED AS MODIFIED

---

Chief Appellate Defender Robert M. Dudek, of
Columbia, for Petitioner.

Attorney General Alan M. Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, Senior
Assistant Attorney General Melody J. Brown, and
Solicitor Daniel E. Johnson, all of Columbia, for
Respondent.

---

**JUSTICE KITTREDGE:** Petitioner Derrick McDonald and two codefendants were convicted of murder and first-degree burglary. The court of appeals affirmed, rejecting McDonald's argument that his Confrontation Clause rights were violated when the trial court admitted the redacted confession of one of his nontestifying codefendants. We granted a writ of certiorari to review the court of appeals' decision in *State v. McDonald*, 400 S.C. 272, 734 S.E.2d 167 (Ct. App. 2012). We find the court of appeals erred, for the jury would readily infer from the face of the codefendant's confession that it referred to and incriminated McDonald. We nevertheless affirm McDonald's conviction, for the error was harmless in light of the overwhelming evidence of guilt.

## I.

McDonald, Christopher Whitehead, Robert Cannon and Joshua Zoch (Victim) worked together at various times at a Sonic fast food restaurant in Columbia, South Carolina. On the evening of December 12, 2006, Victim was brutally murdered in his Kershaw County home. McDonald, Whitehead, and Cannon were charged, tried together, and convicted of burglarizing Victim's home and murdering him.

Earlier on the day of the murder, Whitehead called a co-worker looking for Victim. Whitehead wanted to know if Victim would be home that evening. According to the co-worker, Whitehead wanted to go over to Victim's home to fight him. Whitehead was upset because he believed Victim was a "snitch" who was cooperating with the police in various drug investigations.

At approximately 10:00 in the evening, Whitehead, McDonald and Cannon arrived together at Sonic in Whitehead's car. Cannon was wearing a ski mask, and the assistant manager on duty told all three men to leave the premises. The trio left Sonic together in Whitehead's car and drove to a Wal-Mart, where they purchased a ski mask and latex gloves.

Victim's brutally beaten body was discovered in his home the next day by his girlfriend. Victim was beaten to death by multiple objects. The forensic pathologist testified that he identified between six and eight injuries to Victim's head that were each independently capable of causing death.

The investigation quickly focused on Whitehead, McDonald, and Cannon (Defendants). Investigators spoke to Cannon, who gave a detailed confession implicating all of the Defendants in Victim's murder. Following Cannon's confession, McDonald and Whitehead were arrested. McDonald also confessed

and admitted that the Defendants, after going to Wal-Mart, drove to Victim's home and broke in and killed him. Defendants punched and kicked Victim repeatedly and hit him with a baseball bat and a lamp.

## II.

Defendants were indicted on charges of first-degree burglary and murder. The State chose to try the Defendants jointly and sought to introduce McDonald's and Cannon's confessions during its case-in-chief. Defense counsel and the State argued about how the confessions should be redacted in order to comply with the Confrontation Clause. The State contended redacting the confessions using the neutral phrase "another person" was sufficient, while defense counsel insisted on redacting all references to anyone other than the confessing defendant in each of the statements. The trial court overruled defense counsel's objections and instructed the State to redact the confessions using the phrase "another person." The confessions were admitted over counsel's objection.

According to Cannon's statement, with "another person" substituted for the names of the codefendants:

> On Tuesday the 12th December 2006 at 2:00 p.m. *another person* got off of work and picks me up. We go to the mall and I got a new cell phone and shoes. We then went to pick up *another person* and then we went to McDonalds in Blythwood and eat and from there we went to Sonic. I had on a ski mask and was joking around while *another person* talked to a girl in the back and *another person* was talking to Leroy. I don't know Leroys last name. We then left Sonic and went to the Two Notch Walmart and and *another person* got a ski mask. So we went riding and *another person* said you know we need to do something with these mask, and I ask and *another person* ask like what. And *another person* said like beat Josh's ass because he's a snitch, and I told *another person* I didn't think he was a snitch. *Another person* then ask if me and *another person* wanted to ride and we said whatever.
>
> Because I had nothing else to do and no certain time to be home, that was about 11 p.m. *Another person* was real quiet in the car while we were going to Josh's house. We pulled up to Josh's about 11:30 p.m. *another person* knocked on the front door and Josh didn't answer. So *another person* said that he was going to pull one of my moves and

kick the door. So *another person* went to the side door and he *another person* busted it in.

He went in first and me and *another person* followed him to watch the fight. Josh was asleep on the couch and *another person* yelled hey bitch, and when Josh looked up, *another person* hit him with a glass lamp. Right after that Josh was in a daze and *another person* drags him off the couch part of the way. Then *another person* started pressuring another person to hit Josh with the bat that was in the house and *another person* then hit Josh in the back of head. After that Josh was basicly crawling trying to get up, and the whole time *another person* was talking shit to him about being a snitch. At that time *another person* kicked Josh in the ribs and ask Josh where the weed was and Josh was just grunting. That when *another person* ask me to check the room and we started pulling draws and *another person* flipped the mattress and *another person* was just standing their. Then Josh went unconscious and I got Josh a towel and put it to his head. *Another person* said fuck we don't have anything and pushed the Christmas tree over on Josh. *Another person* then got mad again and took the house phone. But before *another person* left he got some frozen chicken from the freezer and put it on Josh's head to try and stop the bleeding. After that we went back out the same way we came in.

We left and *another person* dropped *another person* off 1st and me second and I guess he went home.

**Q:** Did you, *another person, and another person* have on gloves?
**A:** Yes.

**Q:** What kind of gloves?
**A:** Purple latex and I had on 2 pair white and purple ones on top.

**Q:** Where was the bat from that was used to hit Josh?
**A:** It was in Josh's house. I just looked over their and *another person* picked it up.

**Q:** What were you, *another person, and another person* wearing that night?
**A:** Black pants and shirts and ski mask.

> **Q:** What color was the ski mask?
> **A:** Mine was black and theirs was black or dark blue.
>
> **Q:** Did you change cloths that night after the incident?
> **A:** Yes and *another person* done something with them.

No defendant testified.

The jury found Defendants guilty of both charges. McDonald appealed,[1] contending that his Confrontation Clause rights were violated by the admission of Cannon's redacted confession, arguing that given the context, Cannon's written confession clearly implicated McDonald in the crimes. The court of appeals affirmed, "find[ing] that the neutral phrase 'another person' inserted into Cannon's statement avoided any [Confrontation Clause] violation."[2] *State v. McDonald*, 400 S.C. at 279, 734 S.E.2d at 170. We now review the court of appeals' Confrontation Clause determination.

### III.

"The Confrontation Clause of the Sixth Amendment, extended against the States by the Fourteenth Amendment, guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'" *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (quoting U.S. Const. amend. VI). This constitutional right "include[s] the right to cross-examine those witnesses." *Pointer v. Texas*, 380 U.S. 400, 401 (1965). In *Bruton v. United States*, the United States Supreme Court held that a defendant's Confrontation Clause rights are violated when a nontestifying codefendant's confession that implicates the defendant is admitted during a joint trial. 391 U.S. 123, 127–28 (1968). The Court noted that these "powerfully incriminating extrajudicial statements of a codefendant" are not only "devastating

---

[1] Whitehead also raised a Confrontation Clause challenge on appeal, and the court of appeals affirmed his conviction in an unpublished opinion. *State v. Whitehead*, Op. No. 2012-UP-526 (S.C. Ct. App. filed Sept. 12, 2012). This Court granted a writ of certiorari to review the court of appeals' decision.

[2] McDonald also argued in the court of appeals that the admission of Cannon's statement violated *Crawford v. Washington*, 541 U.S. 36 (2004). The court of appeals held that issue to be unpreserved. *State v. McDonald*, 400 S.C. at 279–80, 734 S.E.2d at 171. This Court denied certiorari as to the *Crawford* issue.

to the defendant but [also] their credibility is inevitably suspect." *Id.* at 135–136. "While appearing to establish a bright-line rule against the admission of a codefendant's confession which incriminates a defendant, the [*Bruton*] Court acknowledged there are alternatives which may allow the admission of a confession while still protecting a defendant's Confrontation Clause rights and in a footnote, mentioned redaction as one of those alternatives." *State v. Henson*, 407 S.C. 154, 162, 754 S.E.2d 508, 512 (2014) (citing *Bruton*, 391 U.S. at 133–34. 134 n.10).

The Supreme Court has revisited the issue twice since *Bruton*. In *Richardson v. Marsh*, the Court addressed the issue of whether the Confrontation Clause is violated "when the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." 481 U.S. 200, 202 (1987). The Court held that there was no Confrontation Clause violation "by the admission of a nontestifying codefendant's confession with a proper limiting instruction" when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. The Court expressly declined to opine "on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n.5.

Eleven years later, the Supreme Court reached that issue in *Gray v. Maryland*, 523 U.S. 185 (1998). The defendant's name in *Gray* was redacted by using the word "deleted" or inserting a blank space, and the Court found that "redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol, still falls within *Bruton*'s protective rule" as it "refers directly to the 'existence' of the nonconfessing codefendant." *Id.* at 192. The Court noted that "the obvious deletion may well call the jurors' attention specially to the removed name." *Id.* at 193. "By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference." *Id.* "In other words, the Court brought within *Bruton*'s prohibition those confessions which facially incriminate through inference." *Henson*, 407 S.C. at 164, 754 S.E.2d at 513.

This Court has followed *Gray*. First, in *State v. Holder*, the Court held that the admission of a nontestifying codefendant's oral statement which replaced the defendant's name with "she" violated the Confrontation Clause "because the jury could readily determine that the statement referred to [defendant] as she was the only female defendant." 382 S.C. 278, 285, 676 S.E.2d 690, 694 (2009). More

recently, in *Henson*, we found that the State's use of a nontestifying codefendant's confession that replaced defendant's name with "the guy," "he," and "him" violated the Confrontation Clause because "the jury could infer from the face of [nontestifying codefendant's] confession without relying on any other evidence, that the confession referred to and incriminated [the defendant.]" 407 S.C. at 166, 754 S.E.2d at 514.

In the instant case, Cannon's confession was redacted using the phrase "another person." However, even a casual reading of the confession makes it apparent that the confession describes the actions of Cannon and two other male individuals. For example, Cannon's confession begins: "On Tuesday the 12th December [sic] 2006 at 2:00 p.m. *another person* got off of work and picks [sic] me up. We go [sic] to the mall and I got a new cell phone and shoes. We then went to pick up *another person* . . . ." Moreover, the redacted version of Cannon's statement repeatedly uses the pronouns "he" and "him," clearly indicating that the unnamed individuals in the confession were male. In light of the fact that there were three male defendants in the trial, the jury was left with the inescapable conclusion that Cannon's confession referred to McDonald and Whitehead, who were seated at counsel table.[3] Under *Bruton* and its progeny, this is insufficient to satisfy the demands of the Confrontation Clause. *See Gray*, 523 U.S. at 196 ("The inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately . . . ."); *Henson*, 407 S.C. at 164, 754 S.E.2d at 513 (stating that *Bruton* prohibits statements "which facially incriminate through inference").

Moreover, we reject the State's invitation to find no Confrontation Clause violation based on the trial court's limiting instruction. The presence of a limiting instruction is not curative here, as it was not in *Bruton*, for "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135 (citations omitted). We hold that the court of appeals erred in finding that the

---

[3] We also note that immediately after the investigator read Cannon's confession to the jury, the solicitor asked, "What happened next in the investigation? What did you do next?" The investigator responded, "After obtaining [Cannon's] statement, we then obtained an arrest warrant for Mr. Derrick McDonald." The inescapable conclusion is that Cannon's statement inculpated McDonald.

admission of Cannon's redacted confession did not violate McDonald's Confrontation Clause rights.

"The mere finding of a violation of [the Confrontation Clause] in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction." *Schneble v. Florida*, 405 U.S. 427, 430 (1972). "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id*. In this case, we find that the overwhelming evidence of McDonald's guilt renders the error harmless beyond a reasonable doubt.

We first note the presence of strong evidence of guilt, apart from the erroneous admission of Cannon's confession. On the evening of the murder, Whitehead informed a co-worker that he intended to go over to Victim's home to fight him. Later that evening, around 10:00 p.m., Defendants arrived at the Sonic, with Cannon donning a ski mask. The shift manager told the Defendants to leave. An on-duty employee then observed Defendants leave together. That employee testified that Whitehead drove a four-door sedan with a noticeably loud muffler sound. Investigators obtained a receipt from the Wal-Mart on Two Notch Road in Columbia, which confirmed that a ski mask and purple latex gloves were purchased at 10:43 p.m. on the night of the murder. At approximately 11:30 p.m., near the time of Victim's murder, Victim's neighbor took his dog outside and heard "a lot of knocking noise[s], loud, like somebody kicking something or slamming doors." About ten minutes later, the neighbor heard "a lot of noise" and "a lot of people getting excited." He then heard a loud muffler sound and observed headlights in the road. A short time later, at about 1:30 a.m., McDonald showed up at a co-worker's house and was visibly upset. The co-worker testified that, although McDonald did stay at his house from time to time, this was the first time McDonald had showed up so late. In addition, the morning after the murder, Whitehead showed up to work at the Sonic with a scratch under one of his eyes and a limp. He began acting strange and lied to his manager about the source of the injuries, claiming that he fell at work. Several days later, he walked out of work during a shift and told his manager that he's "got problems" and was "about to move to Aiken." We find this evidence of guilt, independent of Cannon's confession, compelling.

Beyond the independent evidence of guilt, McDonald gave a confession that was entirely consistent with Cannon's confession. McDonald's confession detailed going to the restaurant with Whitehead and Cannon, purchasing a ski mask and

gloves from Wal-Mart, arriving at Victim's home, kicking in the door, hitting Victim repeatedly in the body and head with a baseball bat, and stealing various items from Victim's home. The properly admitted evidence at trial aligns with the details McDonald provided in his confession. In addition to the corroboration of the purchase at Wal-Mart, part of a purple latex glove was found at the crime scene. Victim's girlfriend further testified that Victim kept a baseball bat at his home, which investigators also found at the crime scene.

Given the extensive evidence of guilt, we conclude that the *Bruton* violation was harmless beyond a reasonable doubt. *See Schneble*, 405 U.S. at 431 (finding a *Bruton* violation to be harmless error when the "details of petitioner's [confession] were internally consistent, were corroborated by other objective evidence, and were not contradicted by any other evidence in the case").[4]

## IV.

We conclude that the admission of Cannon's redacted confession violated McDonald's Confrontation Clause rights. However, in light of the overwhelming evidence of guilt, we determine that that the error in this case was harmless beyond a reasonable doubt. We affirm the court of appeals as modified.

**AFFIRMED AS MODIFIED.**

**TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.**

---

[4] Although we find the error in this case harmless, we take this opportunity to repeat our cautionary warning from almost three decades ago when we "urge[d] the [S]tate to carefully consider all the available alternatives before deciding to try co-defendants jointly." *State v. Bellamy*, 293 S.C. 103, 106, 359 S.E.2d 63, 65 (1987), overruled on other grounds by *State v. Torrence*, 305 S.C. 45, 69 n.5, 406 S.E.2d 315, 328 n.5 (1991). "While we realize there will be circumstances in which a joint trial will be the best route to follow, the decision to pursue this route should be made only after giving due deliberation to the inherent problems, such as redacted statements, which arise from joint trials." *Id.*