# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Charles Dent, Appellant.

Appellate Case No. 2018-001257

_____

Appeal From Beaufort County
Alex Kinlaw, Jr., Circuit Court Judge,

_____

Opinion No. 6034
Submitted September 6, 2023 – Filed November 8, 2023

_____

## AFFIRMED

_____

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Jonathan Scott Matthews, both of
Columbia; and Solicitor Isaac McDuffie Stone, III, of
Bluffton, all for Respondent.

_____

**WILLIAMS, C.J.:**  In this criminal matter on remand from the South Carolina
Supreme Court,[1] Charles Dent appeals his convictions for first degree criminal

_____

[1] In *State v. Dent*, 440 S.C. 449, 892 S.E.2d 294 (2023), the supreme court reversed
this court, finding that although the trial court did err in failing to grant Dent's
request to charge the jury with a *State v. Logan*, 405 S.C. 83, 747 S.E.2d 444
(2013), instruction on circumstantial evidence, the error was harmless.  *See State v.*

sexual conduct (CSC) with a minor and disseminating obscene material to a minor. We affirm.

**FACTS/PROCEDURAL HISTORY**

In August 2014, following the procurement of warrants by the Beaufort County Sheriff's Department, Dent was arrested at his home in Alabama for various charges stemming from alleged sexual abuse of his granddaughter (Victim).[2] At the time of the alleged abuse, Victim lived in South Carolina with her mother (Mother) and her brother. Victim and her family lived in South Carolina from 2012 through 2014, and Dent would periodically stay with them.[3] During this period, Victim and her family lived in two different townhouses on the same street (House One and House Two).

In May 2014, Mother began dating John Camelo. Thereafter, Victim made an initial disclosure of abuse by Dent to Camelo. Camelo notified Mother, and Mother reported the abuse to law enforcement. Thereafter, Victim underwent a forensic interview at Hopeful Horizons regarding her initial disclosure (First Interview). Following the interview, Victim made a second disclosure of abuse by Dent to Camelo. Victim subsequently went to Hopeful Horizons for a second forensic interview (Second Interview).

In October 2014, a Beaufort County grand jury indicted Dent with two charges of first degree CSC with a minor (2014-GS-07-01673; 2014-GS-07-01674) (the CSC Indictments) and two charges of disseminating obscene material to a minor (2014-GS-07-01671; 2014-GS-07-01672) (the Dissemination Indictments).

Prior to trial, Dent moved to quash the Dissemination Indictments, and the trial court denied his motion. In May 2018, the case proceeded to trial during which Victim and Dent both testified.[4] The jury found Dent guilty of both dissemination

---

*Dent*, 434 S.C. 357, 863 S.E.2d 478 (Ct. App. 2021) (holding the trial court erred in failing to charge the jury with a *Logan* instruction when the defendant requested the charge and remanding the matter for a new trial). The supreme court subsequently remanded the case back to this court to address Dent's remaining issues on appeal, which we now do in turn.

[2] Dent also faced charges in Alabama for child pornography.

[3] Victim was seven to nine years old during this time.

[4] Victim was thirteen years old at the time of trial.

charges and one charge of first degree CSC, and the trial court sentenced him to an aggregate term of thirty years' imprisonment.[5] Dent subsequently moved for a new trial, and the court denied his motion. This appeal followed.

## ISSUES ON APPEAL

I.      Did the trial court err in failing to quash the Dissemination Indictments?

II.     Did the trial court err in admitting photographs of Victim?

III.    Did the trial court err in admitting Tessa Trask's expert testimony?

IV.     Did the trial court err in admitting Camelo's testimony?

V.      Did the trial court violate Dent's Sixth Amendment rights in sustaining the State's objection to Dent's cross-examination of Camelo?

VI.     Did the trial court err in denying Dent's motion for a directed verdict on one of the CSC Indictments?

VII.    Did the trial court err in instructing the jury on the definition of sexual battery?

VIII.   Is Dent entitled to a new trial pursuant to the cumulative error doctrine?

## STANDARD OF REVIEW

In criminal cases, the appellate court reviews the underlying matter for an abuse of discretion, which occurs when the findings of the trial court lack evidentiary support or are controlled by an error of law. *State v. Hopkins*, 431 S.C. 560, 568–69, 848 S.E.2d 368, 372 (Ct. App. 2020).

## LAW/ANALYSIS

## I.      Failure to Quash Indictments

---

[5] The jury found Dent not guilty of first degree CSC on Indictment No. 2014-GS-07-01674.

Dent argues the trial court erred in failing to quash the Dissemination Indictments because the State failed to follow the procedural requirements established in sections 16-15-305 and 16-15-435 of the South Carolina Code (2015), which require the solicitor's office to apply for any relevant arrest and search warrants. Dent therefore contends the trial court erred in failing to suppress the photographs collected from electronic devices obtained from the search of Dent's home. Additionally, Dent asserts the trial court erred in denying his motion for a directed verdict on the Dissemination Indictments because the State failed to comply with the aforementioned statutory prerequisites. We disagree.

"The indictment is a notice document." *State v. Gentry*, 363 S.C. 93, 102, 610 S.E.2d 494, 500 (2005). "A challenge to the sufficiency of an indictment must be made before the jury is sworn." *State v. Tumbleston*, 376 S.C. 90, 96, 654 S.E.2d 849, 852 (Ct. App. 2007). "A ruling on a timely objection . . . that an indictment is not sufficient will result in the quashing of the indictment unless the defendant waives presentment to the grand jury and pleads guilty." *Id.* at 97, 654 S.E.2d at 853. "[A]n indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood." *Id.* at 98, 654 S.E.2d at 853.

After the Beaufort County Sheriff's Department obtained search and arrest warrants, a grand jury indicted Dent for multiple counts of first degree CSC with a minor and dissemination of obscene material to a minor. As to the Dissemination Indictments, Dent was specifically indicted for violating section 16-15-355 of the South Carolina Code (2015). Section 16-15-355 provides:

> An individual eighteen years of age or older who knowingly disseminates to a minor twelve years of age or younger material which he knows or reasonably should know to be obscene within the meaning of Section 16-15-305 is guilty of a felony and, upon conviction, must be imprisoned for not more than fifteen years.

Prior to trial, Dent moved to quash the Dissemination Indictments, asserting they were defective because the solicitor did not obtain the search and arrest warrants as required by subsection 16-15-435(A), which states "[a] search warrant or arrest warrant for a violation of Sections 16-15-305, 16-15-315, or 16-15-325 may be issued only upon request of a circuit solicitor." The trial court denied Dent's motion.

The trial court properly refused to quash the Dissemination Indictments. Although subsection 16-15-435(A) does require a circuit solicitor to obtain the search or arrest warrants for a statutory violation, it clearly states such a requirement *only applies* to violations of sections 16-15-305, 16-15-315, and 16-15-325. The Dissemination Indictments indicate Dent violated section 16-15-355. Therefore, subsection 16-15-435(A) does not apply, and Dent's argument is without merit. Further, the indictments provided sufficient notice of the crimes charged as required by our precedent. *See Gentry*, 363 S.C. at 102, 610 S.E.2d at 500 ("The indictment is a notice document."); *Tumbleston*, 376 S.C. at 98, 654 S.E.2d at 853 ("[A]n indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood."). Accordingly, we affirm the trial court on this issue.[6]

## II. Admission of Photographs

Dent argues the trial court erred in admitting photographs of Victim when the photographs were not relevant and the State failed to authenticate them or establish a chain of custody. Specifically, Dent argues the trial court erred in admitting State's Exhibits 1, 3, and 4 (Group One Photos) because they were not relevant to establishing his guilt. Dent also asserts the trial court erred in admitting State's Exhibits 6, 11, 13, and 15 (Group Two Photos) because the prejudicial effect substantially outweighed any probative value. We disagree.

During the search of Dent's home in Alabama, law enforcement seized multiple electronic devices that were in plain view, including a camera and a camcorder. Law enforcement subsequently obtained a search warrant for the seized electronic devices and recovered various photographs of Victim. The State originally sought to introduce evidence of child pornography found on Dent's seized computer but ultimately decided not to present it. The State additionally sought to admit the photos of Victim found on Dent's camera and camcorder and proffered testimony

---

[6] Because the trial court did not err in declining to quash the Dissemination Indictments, this court need not address Dent's remaining arguments as to whether the trial court erred in failing to suppress the photographs obtained from the search of Dent's home and in denying his motion for a directed verdict on the Dissemination Indictments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

from two Alabama law enforcement officials.  However, the trial court found the State failed to properly authenticate the photos because the former law enforcement official who extracted the photos was unavailable to testify at trial.  The State then sought to admit the photos through Victim's testimony and recalled her as a witness, and the trial court admitted the photos.[7]

During her testimony, Victim identified herself in each of the photos and verified the photos were taken at Houses One and Two when she lived in South Carolina from 2012 to 2014.  The Group One Photos included three photos of Victim: (1) Victim at House 2 on her birthday (State's Ex. 1), (2) Victim cooking with Dent in the kitchen of House One (State's Ex. 3), and (3) Victim with Dent's pet rabbit in the guest bedroom where Dent stayed in House Two (State's Ex. 4).  The Group Two Photos were more sexual in nature, but Victim was clothed in all of the photos.  The Group Two Photos included three photos in which Victim was lying on a bean bag with her legs spread and pulled up towards her shoulders (State's Ex. 11) and standing facing the camera with her torso bent forwards with a view down her shirt (State's Ex. 6, 13).  This group of photos also contained an image of a young girl's legs (State's Ex. 15).  Victim identified herself in the photo, stating she recognized the green shorts she wore to her dance classes that she took while living in South Carolina.  Victim further testified that although she was not positive who took the Group Two Photos, she believed it was Dent.

"The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court." *State v. Hawes*, 423 S.C. 118, 129, 813 S.E.2d 513, 519 (Ct. App. 2018) (quoting *State v. Johnson*, 338 S.C. 114, 122, 525 S.E.2d 519, 523 (2000)).  "As a general rule, all relevant evidence is admissible." *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 27 (2014).  However, "[a]ll evidence must be authenticated." *State v. Green*, 427 S.C. 223, 229, 830 S.E.2d 711, 714 (Ct. App. 2019), *aff'd as modified*, 432 S.C. 97, 851 S.E.2d 440 (2020) ("For the reasons set forth by the court of appeals, we affirm the trial court's authentication determination and admission of the social media posts without further comment.").  "The trial judge acts as the authentication gatekeeper, and a party may open the gate by laying a foundation from which a reasonable juror could find the evidence is what the party claims." *Id.* at 230, 830 S.E.2d at 714; *see also* Rule 901(a), SCRE ("The requirement of authentication or

_____

[7] Following the trial court's finding that the State failed to sufficiently establish a chain of custody for the photographs through the Alabama witnesses, the State did not make any assertions or suggestions to the jury that the photos came from Dent's camera or camcorder.

identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). "[T]he burden to authenticate . . . is not high." *Deep Keel, LLC v. Atl. Private Equity Grp., LLC*, 413 S.C. 58, 64, 773 S.E.2d 607, 610 (Ct. App. 2015) (alterations in original) (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).

As to authentication, the trial court did not abuse its discretion in finding the State authenticated the Group One and Group Two Photos. Victim identified herself in each of the photos and confirmed the photos were taken at Houses One and Two. Although Victim's face was not in State's Ex. 15, Victim testified she believed herself to be the subject of the photo because she recognized her green shorts that she wore to dance lessons that she attended while living there. Accordingly, we find Victim's personal knowledge of the scene and subject of the photos was sufficient to authenticate them. *See State v. Hurell*, 424 S.C. 341, 353–54, 818 S.E.2d 21, 27 (Ct. App. 2018) ("Normally, it is sufficient for the admission of photographs that a person familiar with the subject, such as a scene, testify that the photographs truly represent what they purport to depict." (quoting Alex Sanders & John S. Nichols, *Trial Handbook for South Carolina Lawyers* § 19:12 (Sept. 2017))). Further, because Victim authenticated the photos through her testimony, the State was not required to establish a chain of custody for the photos. *See State v. Aragon*, 354 S.C. 334, 337, 579 S.E.2d 626, 627 (Ct. App. 2003) (holding establishing a chain of custody was not necessary when the evidence was "otherwise authenticated"); *see also United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982) ("The 'chain of custody' rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence.").

Regarding the relevance of the Group One Photos, we find the trial court did not err in admitting them because they corroborated Victim's and other witnesses' testimony that Victim lived in Houses One and Two during the time of the alleged abuse and that Dent stayed in both houses when he visited. The photos also corroborated Victim's age at the time of the abuse. *See State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996) ("If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it."); *see also Collins*, 409 S.C. at 534, 763 S.E.2d at 27 ("As a general rule, all relevant evidence is admissible."); Rule 401, SCRE (providing that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Finally, we hold the trial court properly found the Group Two Photos were admissible under Rule 403, SCRE. *See* Rule 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"); *Collins*, 409 S.C. at 534, 763 S.E.2d at 28 ("A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003))). Although the Group Two Photos were more sexual in nature, we find their probative value in corroborating Victim's testimony and forensic interviews and in establishing the elements of the offenses charged outweighed any prejudicial effect.

Based on the foregoing, we hold the trial court did not abuse its discretion in admitting the photographs of Victim. *See Hawes*, 423 S.C. at 129, 813 S.E.2d at 519 ("The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court." (quoting *Johnson*, 338 S.C. at 122, 525 S.E.2d at 523)). Accordingly, we affirm the trial court as to this issue.

## III. Admission of Testimony

### A. Trask's Testimony

Dent contends the trial court erred in admitting the expert testimony of Tessa Trask. Specifically, Dent argues the trial court erred in failing to determine the reliability of Trask's testimony. We agree.

"A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion." *State v. Prather*, 429 S.C. 583, 598, 840 S.E.2d 551, 559 (2020) (quoting *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015)). "A trial court's ruling on the admissibility of expert testimony constitutes an abuse of discretion whe[n] the ruling is unsupported by the evidence or controlled by an error of law." *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "Before admitting expert testimony, a trial court must qualify the expert and determine whether the subject matter of the expert's proposed testimony is reliable, as required by Rule 702, SCRE." *Prather*, 429 S.C. at 599, 840 S.E.2d at 559. "While both scientific

and nonscientific expert testimony require the trial court make a finding of reliability, there is no formulaic approach for determining the reliability of nonscientific testimony." *Jones*, 423 S.C. at 638–39, 817 S.E.2d at 272.

During a pretrial hearing, the State sought to qualify Trask as an expert witness. Trask testified as to her qualifications, stating she worked as a counselor and forensic interviewer at Hopeful Horizons. Trask clarified she presently only had a provisional counseling license but would receive her full license the following August after completing the remainder of her required clinical hours. When asked what qualified her as an expert in the field, Trask responded, "I would say my training and my clinical experience would make me an expert . . . I'm referring to my training in general, all of my training, . . . including my forensic training." When Dent sought further information as to her training, the trial court sustained an objection by the State. Dent subsequently objected to the admission of Trask's testimony, asserting the State had failed to show that the substance of Trask's proposed testimony was reliable and requested the trial court assess the reliability through a proffer of her testimony. The trial court declined Dent's request, instead electing to have the State proffer "bullet points" of her intended testimony. Dent thereafter renewed his objection, arguing the substance of Trask's testimony was still indiscernible. The following exchange occurred:

> Court: Well, you can object at the appropriate time. But I don't think that—I mean, Counsel gave you the bullet point of what she was going to testify to. You want the nuts and bolts. I can't give you the nuts and bolts tonight.
>
> Dent: I want you to review the nuts and bolts as you're required to do under *Watson v. Ford Motor Company* and *Chavis* as the gatekeeping function. That's what I'm asking for.

The trial court took the matter under advisement, deferring its ruling until the following morning. The trial court subsequently qualified Trask as an expert in behavioral characteristics of child abuse, noting Dent's objection. Dent renewed the objection at trial.

We find the trial court failed to appropriately dispense of its gatekeeping duties as required by our precedent. *See Prather*, 429 S.C. at 599, 840 S.E.2d at 559 ("Before admitting expert testimony, a trial court must qualify the expert and determine whether the subject matter of the expert's proposed testimony is reliable,

as required by Rule 702, SCRE."); *see also State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009) ("All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration."). Although Trask testified as to her education and professional qualifications, the State failed to establish that the substance of her testimony was reliable. When asked what specifically informed her assessments and opinions, Trask provided vague responses, and the trial court prevented Dent's attempt at further clarification. Although we recognize there is no formulaic approach in determining the reliability of non-scientific expert testimony, the record contains no indicia of reliability as to Trask's proposed testimony. Thus, the trial court failed to fulfill its gatekeeping function by declining to analyze the reliability of the testimony. *See, e.g.*, *Watson v. Ford Motor Co.*, 389 S.C. 434, 452, 699 S.E.2d 169, 178 (2010) ("In our view, the trial court's error in admitting Dr. Anderson's testimony is largely based on solely focusing on whether he was qualified as an expert in the field of electrical engineering and failing to analyze the reliability of the proposed testimony.").

However, we find this error did not prejudice Dent's defense. *See id.* at 448, 699 S.E.2d at 176 ("Prejudice is a reasonable probability that the jury's verdict was influenced by the challenged evidence."). At trial, Trask testified solely as to general observations in behavior of children who suffered abuse. Trask further averred she was not involved in Victim's case and had not reviewed Victim's files. Accordingly, we affirm the trial court as to this issue.

### B. Camelo's Testimony

#### i. Bolstering Testimony

Dent argues the trial court erred in allowing Camelo, Mother's ex-boyfriend, to provide lay opinion testimony as to whether Victim had been sexually abused. Dent contends this testimony contained improper bolstering in violation of the holdings of *State v. Anderson*, 413 S.C. 212, 776 S.E.2d 76 (2015), *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013), and *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011). We disagree.

During trial, the State called Camelo as its first witness. Camelo testified he dated Mother in 2014 for four or five months and spent time with Victim during their relationship. On direct examination, the State questioned Camelo about his prior law enforcement experience but did not seek to qualify him as an expert. Dent

objected to the questioning, asserting the State was attempting to "portray Mr. Camelo as somebody who had special training in order to be able to detect child abuse or sexual abuse." The trial court held an in camera hearing during which the State proffered the remainder of Camelo's testimony regarding his interactions with Victim. Following the proffer, the trial court limited Camelo's testimony, stating "there will be no questions regarding whether or not he had an opinion regarding abuse."

Thereafter, Camelo testified he had personal experience with sexual abuse, stating he was sexually abused by a family friend between the ages of twelve and thirteen. Camelo further testified he had personal experience with raising young girls because he raised his stepdaughter. When asked about his time spent with Victim, Camelo testified he noticed "red flags" in her behavior. Specifically, Camelo stated he noticed "[g]estures of a sexual nature that a nine-year-old . . . wouldn't normally know without having been shown or taught by someone." According to Camelo, Victim liked to kiss him on the cheek, grope his groin area, and hug him "more than you would expect [for] someone [who] isn't her guardian or parent raising her." Based on these behaviors, Camelo asked Victim "if anyone had done anything inappropriate to her." In response, Victim made a disclosure to Camelo (Initial Disclosure).

Camelo neither testified as to what Victim said nor made any assertions as to whether he believed the Initial Disclosure to be true. Rather, he testified the information was "very concerning" and he immediately informed Mother, who notified law enforcement. Camelo further testified Victim made an additional disclosure (Second Disclosure) to him some time after her initial forensic interview. According to Camelo, Victim handed him a piece of paper with a handwritten note on it and then ran off. After reading the note, Camelo gave it to Mother. Camelo did not testify as to what the note said but stated he found it more concerning than the Initial Disclosure.

Based on the foregoing, we find the trial court did not err in allowing Camelo's testimony. *See Kromah*, 401 S.C. at 349, 737 S.E.2d at 494–95 ("The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006))). Under *Jennings* and its progeny, it is improper for a witness to provide opinion testimony regarding the credibility of a child victim in a sexual abuse case. *See Anderson*, 413 S.C. at 218–19, 776 S.E.2d at 79 (cautioning against calling the forensic interviewer who examined the child victim

as a witness because of "the risk that the expert will vouch for the alleged victim's credibility"); *Kromah*, 401 S.C. at 358–59, 737 S.E.2d at 500 ("[I]t is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter."); *Jennings*, 394 S.C. at 480, 716 S.E.2d at 94 ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper."). However, Camelo made no assertions relating to Victim's credibility but merely recounted his personal experiences regarding Victim's disclosures. *See Watson*, 389 S.C. at 446, 699 S.E.2d at 175 ("[A] lay witness may only testify as to matters *within his personal knowledge* and may not offer opinion testimony which requires special knowledge, skill, experience, or training." (emphasis added)). Therefore, we affirm the trial court on this issue.

### ii. Confrontation Clause

Dent additionally asserts the trial court violated the Sixth Amendment Confrontation Clause when it prevented him from questioning Camelo regarding the reasons for Camelo's breakup with Mother. We disagree.

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him.'" *State v. Henson*, 407 S.C. 154, 161, 754 S.E.2d 508, 512 (2014) (alterations in original) (quoting U.S. Const. amend. VI). "This constitutional right, which applies to the states through the Fourteenth Amendment, guarantees a defendant in a criminal trial the right to cross-examine the witnesses against him." *Id.*

On direct examination, the following exchange occurred:

> The State: At some point, did your relationship with [Mother] end?
>
> Camelo: Yes.
>
> The State: When was that?
>
> Camelo: Very shortly after—after all of this initiated, which, unfortunately, became very stressful, a very stressful, strange situation. And I just felt it was best to end the relationship.

On cross-examination, the following exchange occurred:

> Dent: Right.  And you said that—earlier, you talked about you and [Mother] breaking up; isn't that right?
>
> Camelo: Correct.
>
> Dent: And you attributed it to the stress of this; is that right?
>
> Camelo: On my part.
>
> Dent: Okay.  You had, also, learned some information about [Mother's] background, hadn't you?
>
> Camelo: What information are you, specifically, asking me about?
>
> Dent: That she had been a stripper in Florida and had smoked marijuana—

At this point, the State objected as to relevance, and the trial court sustained the objection.  Dent then sought an in camera hearing, asserting his Sixth Amendment rights under the Confrontation Clause entitled him to question Camelo regarding the breakup because the State initiated the line of questioning on direct.  Specifically, Dent argued he was entitled to rebut the suggestion made on direct examination that Victim's disclosures were the reason for the end of the relationship between Camelo and Mother.  In response, the State asserted the testimony was irrelevant and that Dent was improperly attempting to tarnish Mother's credibility as a witness.  The trial court then had Dent proffer Camelo's proposed testimony.  Ultimately, the trial court sustained the State's objection and struck the prior question from the record, finding the testimony was irrelevant to Dent's guilt.

The trial court did not abuse its discretion in sustaining the State's objection.  *See State v. Gracely*, 399 S.C. 363, 371, 731 S.E.2d 880, 884 (2012) ("This [c]ourt will not disturb a trial court's ruling concerning the scope of cross-examination of a witness to test his or her credibility, or to show possible bias or self-interest in testifying, absent a manifest abuse of discretion.").  "Evidence which is not relevant is not admissible."  Rule 402, SCRE.  Evidence is relevant if it has "any

tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." Rule 401, SCRE (emphasis added). We fail to see how Mother's former occupation and possible recreational habits bear relevance to the charges of first degree CSC and dissemination of obscene material to a minor brought against Dent. Thus, we affirm the trial court on this issue.

## IV.    Directed Verdict

Dent argues the trial court erred in denying his motion for a directed verdict on the 2014-GS-07-01673 indictment. We disagree.

Following the close of the State's case, Dent moved for a directed verdict on the CSC indictment alleging the State failed to present evidence that Victim performed fellatio on Dent at House Two. Specifically, Dent argued the evidence was insufficient to withstand a directed verdict motion because Victim testified she only performed fellatio one time, and in the Second Interview, she stated the first time she performed fellatio on Dent was at House One. The trial court denied Dent's motion, finding sufficient evidence existed to support a finding that Victim performed fellatio on Dent at House Two. Dent later renewed his motion, which the trial court denied.

When ruling on a directed verdict motion, the trial court "must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt." *State v. Bennett*, 415 S.C. 232, 237, 781 S.E.2d 352, 354 (2016). "In cases where the State has failed to present evidence of the offense charged, a criminal defendant is entitled to a directed verdict." *State v. Hepburn*, 406 S.C. 416, 429, 753 S.E.2d 402, 408 (2013). "On appeal from the denial of a directed verdict in a criminal case, an appellate court must view the evidence in the light most favorable to the State." *State v. Davis*, 422 S.C. 472, 482, 812 S.E.2d 423, 429 (Ct. App. 2018) (quoting *State v. Stanley*, 365 S.C. 24, 41, 615 S.E.2d 455, 464 (Ct. App. 2005)). "[T]he appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling." *State v. Lindsey*, 355 S.C. 15, 20, 583 S.E.2d 740, 742 (2003).

During trial, the State admitted both of Victim's forensic interviews into evidence, and the interviews were played for the jury. Victim did not make a disclosure regarding fellatio until the Second Interview. During the interview, Victim stated the first time she performed fellatio on Dent was at House One; however, she indicated multiple times that Dent had her perform fellatio on him more than once,

and she did not state the abuse occurred only at House One. In fact, Victim provided detailed accounts of the suffered abuse, which included other types of sexual battery, and stated the abuse occurred at both houses. At trial, Victim provided conflicting testimony, stating she only performed fellatio on Dent once. However, she did not testify as to where that incident occurred.

Based on the foregoing, we find the trial court did not abuse its discretion in denying Dent's motion for a directed verdict as the State presented evidence from which a reasonable juror could conclude that Victim performed fellatio on Dent at House Two. *See Bennett*, 415 S.C. at 237, 781 S.E.2d at 354 ("[A]lthough the *jury* must consider alternative hypotheses, the *court* must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt."). Accordingly, we affirm the trial court on this issue. *See Lindsey*, 355 S.C. at 20, 583 S.E.2d at 742 ("[T]he appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling.").

## V.  Jury Instruction

Dent asserts the trial court erred in charging the jury with the full definition of sexual battery when fellatio was the only sexual battery listed in the CSC Indictments.[8] Specifically, Dent contends this was an improper variance of the indictment. We disagree.

"A person is guilty of criminal sexual conduct with a minor in the first degree if . . . the actor *engages in sexual battery* with a victim who is less than eleven years of age." S.C. Code Ann. § 16-3-655(A)(1) (2015) (emphasis added). "'Sexual battery' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C. Code Ann. § 16-3-651(h) (2015).

During the charge conference, Dent requested the trial court limit its definition of sexual battery to only fellatio as that was the only battery listed on the CSC Indictments. Dent asserted charging the full definition created a variance in the indictment and allowed the State to seek a guilty verdict based on multiple sexual

---

[8] The jury found Dent not guilty of first degree CSC alleged in Indictment No. 2014-GS-07-01674; therefore, Dent's contention on appeal only applies to Indictment No. 2014-GS-07-01673.

batteries not listed in the indictments. *See Bailey v. State*, 392 S.C. 422, 433, 709 S.E.2d 671, 677 (2011) (alteration in original) ("In South Carolina, '[i]t is a rule of universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment.'" (quoting *State v. Gunn*, 313 S.C. 124, 136, 437 S.E.2d 75, 82 (1993))); *id.* ("A material variance between charge and proof entitles the defendant to a directed verdict; such a variance is not material if it is not an element of the offense." (quoting *Gunn*, 313 S.C. at 136, 437 S.E.2d at 82)); *id.* (alteration in original) ("[W]hile a conviction may be sustained under an indictment which is defective because it omits essential elements of the offense, such is not true when the indictment facially charges a complete offense and the State presents evidence which convicts under a different theory than that alleged." (quoting *Thomason v. State*, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994))). The trial court denied Dent's request and charged the full definition of sexual battery as listed in subsection 16-3-651(h). Following the jury charge, Dent renewed his objection, and the court declined to recharge the jury.

We hold the trial court did not err in charging the full definition of sexual battery. Engaging in a sexual battery is the element of the crime charged—first degree CSC. *See* § 16-3-655(A)(1). Fellatio is a type of battery that can satisfy this element. Thus, it was not improper for the court to charge the full definition even though the indictment specifically listed fellatio as the sexual battery at issue. Accordingly, we affirm the trial court on this issue. *See Hopkins*, 431 S.C. at 568–69, 848 S.E.2d at 372 (providing appellate courts review criminal matters for an abuse of discretion).

## VI.    Cumulative Error Doctrine

Based on the foregoing allegations, Dent contends he is entitled to a new trial based on the cumulative error doctrine. We disagree. The defendant must "demonstrate more than error" to obtain reversal on the ground of the cumulative error doctrine. *State v. Johnson*, 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999). The combined "errors must adversely affect his right to a fair trial." *Id.* Although the record reveals errors, we find these errors did not impact the fairness of Dent's trial when considered in the context of the foregoing analysis. Accordingly, we hold Dent is not entitled to a new trial based upon the cumulative error doctrine.

## CONCLUSION

Based on the foregoing, Dent's convictions are

**AFFIRMED.**

**THOMAS and HEWITT, JJ., concur.**